RUSS v. THE WABASH WESTERN RAILWAY COMPANY, *Appellant.*

In Banc, November 14, 1892.

1. **Practice:** EVIDENCE: HYPOTHETICAL QUESTIONS. A hypothetical question must be founded on evidence tending to establish all the facts recited in the question.

2. ———: ———: ———: ERROR. Nor is the error cured by reason of the fact that the opposing party committed a like error.

3. ———: OPENING STATEMENTS OF COUNSEL: ADMISSIONS. Opening statements of counsel as to facts he expects to prove on the trial have not the force of a binding admission.

4. **Negligence:** RAILROAD: SECTION FOREMAN: VICE-PRINCIPAL. The section foreman of a railroad company who has the power to employ and discharge the men under him and the control of their work and movements is a *vice-principal.*

5. ———: ———: ———: ———. His negligent acts done in the performance of duties devolved upon him as foreman are the negligent acts of the defendant, and it is liable therefor.

6. ———: ———: ———: ———. Where such section foreman under whom plaintiff was employed directed a water keg to be placed on the front end of a handcar for his seat so that he could look ahead and observe the track, and while the car was in motion got up and allowed the keg to fall off, thus causing the car to leave the track and injure plaintiff, the injury was occasioned by the negligence of the foreman in the line of his duty, and the company is responsible therefor.

*Appeal from St. Charles Circuit Court.*

REVERSED AND REMANDED.

*F. W. Lehmann* and *G. S. Grover* for appellant.

(1). The demurrer to the evidence should have been sustained, as the evidence simply disclosed the happening of an unfortunate accident without any fault whatever on the part of the defendant. *Lee v. Bridge & Iron Works*, 62 Mo. 565; *Marshall v. Shricker*, 63 Mo. 312; *Bowen v. Railroad*, 95 Mo. 268; Cooley on Torts [2 Ed.] p. 91, and cases cited; *Schaub v. Railroad*, 106 Mo. 74; *Steffenson v. Railroad*, 51 N. W. Rep. 610; *Railroad v. Lennon*, 18 S. W. Rep. 331. (2) The court permitted the expert medical witnesses to usurp the province of the jury by stating conclusions instead of facts, and also permitted them to answer hypothetical questions which were not based upon the evidence. Rogers on Expert Testimony [2 Ed.] pp. 66-7, and cases cited; *Haish v. Payson*, 107 Ill. 365; *Fire-Proofing Co. v. Poezekai*, 130 Ill. 139; *Hoener v. Koch*, 84 Ill. 408; *Railroad v. Railroad*, 67 Ill. 142; *Van Zandt v. Ins. Co.*, 55 N. Y. 169; *State v. Rainsbarger*, 74 Iowa, 196; *Fraser v. Jennison*, 42 Mich. 206. (3) By the third instruction, given at the request of the plaintiff, the jury were authorized to find a verdict in his favor entirely outside of any issue raised by the petition. *Ely v. Railroad*, 77 Mo. 34; *Abbott v. Railroad*, 83 Mo. 278; *Harty v. Railroad*, 95 Mo. 368. (4) The court gave erroneous instructions at the request of plaintiff. Authorities cited, *supra*. (5) The court gave an improper instruction of its own motion. (6) The court refused improper instructions asked by defendant.

*N. C. Dryden* and *T. J. Rowe* for respondent.

(1) Plaintiff made a *prima facie* case. *Railroad v. Northington*, 17 S. W. Rep. (Tenn.) 881; *Dowling v.*

*Allen*, 74 Mo. 14; *McDermott v. Railroad*, 87 Mo. 287; *Moore v. Railroad*, 85 Mo. 588; *Hoke v. Railroad*, 88 Mo. 369. (2) No specific objections were made by defendant to the questions asked the expert witnesses. (3) Defendant cannot here complain of errors which it invited the trial court to commit. *Loomis v. Railroad*, 17 Mo. App. 353; *Noble v. Blount*, 77 Mo. 235; *Walker v. Owen*, 79 Mo. 568; *Holmes v. Braidwood*, 82 Mo. 617; *Davis v. Brown*, 67 Mo. 313. (4) The jurors were properly instructed; the case was fairly tried; the verdict is for the right party; and no error can be found in the record "materially affecting the merits of the action."

BLACK, J.—This was an action to recover damages because of personal injuries received by the plaintiff while in the employ of the defendant company.

The plaintiff and four other persons were section hands, and were all under the orders of one Bizzenberger, who was their foreman. The foreman and his men, including the plaintiff, were out on the road at work at a point west of O'Fallon. Preparatory to going east to O'Fallon they placed their tools and a water keg on a handcar and then started. The keg was large enough to hold ten gallons, and on their way it rolled off in front of the car. It threw the car and the plaintiff and the other men off the track, and he was seriously and permanently injured. He was removed to a hospital in St. Louis, where he remained five days. At the expiration of that time he went to the defendant's office in St. Louis, where he executed a writing whereby for the consideration of $1 and re-employment by the defendant for such time only as might be satisfactory to defendant he released defendant from all claims he might have for damages because of the injuries so received.

The defendant answered by setting up, among other things, the release. To this the plaintiff made reply by admitting that he executed the same, and by alleging that at the time he signed it his mind was so impaired from the injuries which he had received that he did not know what he was signing.

The complaint and the only one arising out of the pleadings and trial, as to this particular issue, is that the court erred in admitting certain expert evidence. The plaintiff produced several physicians, and his counsel propounded to them lengthy hypothetical questions, one covering seven pages of printed matter. The defendant objected to this question on the ground that it assumed facts not proved, and because it was wholly incompetent.

In stating the facts, from which the witness is asked to give his professional opinion, the question sets out at great detail the incidents and circumstances which it is assumed occurred at the defendant's office at the time the contract was signed. There was no evidence produced in the cause showing or tending to show that such incidents and circumstances occurred, and for this reason the question should have been excluded. Counsel in propounding a hypothetical question to an expert witness may assume any state of facts which the evidence tends to establish, and may vary the questions so as to cover and present the different theories of fact. But there must be evidence in the case tending to establish all of the facts stated in the question. If the question assumes any fact which the evidence does not tend to prove, it should be excluded. Rogers says: "To allow on the direct examination a hypothetical question to be put which assumes a state of facts not warranted by the testimony is error, and counsel will never be permitted to embrace in one hypothetical question anything which the testi-

mony does not either prove or tend to prove.'' Rogers on Expert Testimony [2 Ed.] sec. 27. The following cases and many others are to the same effect: *Williams v. Brown*, 28 Ohio St. 547; *Muldowney v. Railroad*, 39 Iowa, 615.

Again, the question does not, in many respects, state the facts, but leaves it to the expert witness to say what the facts are, that is to say, whether the witnesses testified to the truth. Thus it states that the plaintiff appeared at the railroad office five days after the reception of the injury with a letter signed by the physician in charge of the hospital, ''which physician says he never wrote the letter;'' ''he acted and talked, so Austin says, rationally, stating,'' etc.; ''probably nineteen days after the reception of the injuries, he marries, of which he claims to have no knowledge whatever.'' It was the duty of the jury, not of the expert witness, to say whether the physician wrote the letter, whether plaintiff talked rationally, and whether the plaintiff did not know of his marriage. The question should state that the physician did not write the letter, that plaintiff talked rationally on the one occasion, and that he did not know of his marriage. It is the province of the jury to say what the facts are, and the answer of the expert is of no value whatever if the jury do not believe the assumed facts to be true. If the assumed facts are found to be true by the jury, then the answer of the expert becomes of value. Hence it is, that the assumed facts should be stated as facts, so that the jury can consider or reject the opinion of the expert, accordingly as they may find the assumed facts to be true or false.

The interrogatory under consideration is bad, for the further reason that it parades before the jury a vast number of immaterial circumstances, circumstances which, if true, have no tendency whatever to show that

the mind of the plaintiff was sound or unsound. Coupling into a question so many immaterial circumstances must have a tendency to mislead the jury into the belief that these immaterial matters are of some value.

The plaintiff insists that the question propounded to the expert was not erroneous, in so far as it assumed unproved facts, because counsel for defendant, in his opening statement to the jury, said he expected to prove the particular facts; and because there were depositions on file which tended to establish the assumed facts. As the depositions were not read in evidence, they furnished no proof of the assumed facts. Statements made by an attorney, at the opening of the trial, as to what he expects to prove, do not amount to admission. They bind no one. For the error in allowing this and some other like questions, the judgment must be reversed. It may be added that the fact, that defendant in putting in its evidence committed a like error, does not cure the error committed at the instance of the plaintiff in making out his case.

2.   The case was submitted to the jury on the second ground of negligence, wherein it is stated that the plaintiff was injured in consequence of want of care and caution of the foreman in failing to secure the water keg on which he had been sitting, and which keg he negligently knocked off the car, or negligently permitted to fall off, while the car was in motion.

The evidence is to the effect that the foreman had power to and did employ and discharge the men constituting his gang, and that he had full control of the work and the men under him. A west-bound train was nearly due, and, hence, the foreman directed the men to go to O'Fallon. In obeying this order the men placed their tools on the handcar. The plaintiff testified that Crews, another laborer, picked up the keg and started

to place it on the car between the handles, when the foreman said, "Set it in front; I will take care of it." Crews testified that he started to put the keg between the handles on the car, when the foreman said, "Let me have it; I want it to sit on." The keg was used by the gang for the purpose of carrying water. It was placed on the front end of the car, and the foreman used it as a seat for a time. After they had moved some three hundred yards the foreman gave the order, "Put her through, boys." He at the same time jumped up and commenced "pumping," that is, assisting the men in propelling the car. At this moment one of the men who was at the rear lever said, "The keg is falling off; catch it." Plaintiff was operating the forward lever, but his back was in the direction in which the car was moving. The keg fell off in front of the car, causing the car to leave the track, producing the injuries complained of.

The first contention is that the defendant's demurrer to the evidence should have been sustained, because the evidence shows and only tends to show an unfortunate accident, without any fault or negligence on the part of the foreman. We are of a contrary opinion. The foreman had caused the keg to be placed at the front end of the car; he used it as a seat, and of course knew that he left it unsecured when he got up. It stood at a place where it was liable to roll off in front by reason of the jostling of the car. We think the jury might well find that he was negligent in leaving the keg in its then position without in any way securing it.

The further point is made that, even if the foreman was negligent in leaving the keg unsecured when he got up to assist the men in propelling the car, he was not then in the performance of any duty which the law imposed upon the defendant, and that, therefore, the defendant is not liable; that as to this negligent act he

was not the representative of the defendant, but was simply the fellow-servant of the plaintiff.

There can be no doubt but the foreman was the vice-principal of the defendant, for he had the power conferred upon him to employ and discharge the men under him, and he had full control of the work and movements of the men. In the performance of the duties devolved upon him as foreman, he was not a coservant with the plaintiff, but was a representative of the defendant. His negligent acts done in the performance of duties devolved upon him as foreman were the negligent acts of the defendant, and for such negligence the defendant is liable. *Brothers v. Cartter*, 52 Mo. 372; *Gormly v. Iron Works*, 61 Mo. 492; *Cook v. Railroad*, 63 Mo. 398; *Sullivan v. Railroad*, 107 Mo. 66. When speaking upon this subject, this court said in substance in *Moore v. Railroad*, 85 Mo. 588, that they are co-laborers who are engaged in the same common work without rank, either under the direction and management of the master himself or of some servant of the master placed over them; he is a vice-principal who is intrusted by the master with power to superintend and control the workmen engaged in the performance of the work. That case has been followed, and the rule there asserted applied in a number of subsequent cases, under a variety of circumstances. *Hoke v. Railroad*, 88 Mo. 360; *Stephens v. Railroad*, 86 Mo. 221; *Smith v. Railroad*, 92 Mo. 359; *Tabler v. Railroad*, 93 Mo. 79.

In the most of these cases the negligent act of the agent consisted in giving some order by the foreman or superintendent; but the principle of liability is not confined to negligent orders. The liability may arise from the negligent performance of some work done by the foreman or superintendent. Thus where a master provides suitable materials for a staging, and intrusts the duty of erecting it to the workmen as a part of the

work which they undertake to perform, he is not liable for injuries resulting to one of them from the falling of the staging; but, if the master undertakes to furnish the staging, he must use due care in its erection, and, if there is negligence on his part or the part of one representing him in that respect, he is liable for injuries resulting to the servant using the structure. *Whalen v. Church*, 62 Mo. 327; *Bowen v. Railroad*, 95 Mo. 277, and cases there cited.

In the recent case of *Dayharsh v. Railroad*, 103 Mo. 574, one Stephens had charge of the engine in the roundhouse and of the men necessary to assist him in the work. He with his own hand ran an engine upon one of the men under him, and it was held that the injured employe could recover.

There are cases where the agent's authority to represent the master is limited, but that is not the present case. As to this gang of men the foreman represented the defendant to the fullest extent. He took his seat on the keg on the front end of the car so as to look ahead and to observe the track as he passed over it, and this was in the line of his duty as foreman. It was also his duty to look out for the safety of the men who were engaged in propelling the car; and, if he saw fit and proper to assist the men, it was still none the less his duty to continue to care for their safety. Such a negligent act as that here complained of cannot be separated from negligence in the performance of other delegated powers.

3. There is the further objection that the third instruction given at the request of the plaintiff is erroneous in this, that it enlarges the issues made by the pleadings. We need not enter into any discussion of this objection, since it can be easily avoided on another trial.

The judgment is reversed and the cause remanded. All concur.