KEOWN v. THE ST. LOUIS RAILROAD COMPANY, *Appellant.*

Division One, July 17, 1897.

1. **Damages:** THROWING GRIPMAN FROM CAR: NEGLIGENCE. Plaintiff's husband was killed by being thrown from a train of cable cars as he passed from a passenger car to a grip car on which he was to act as gripman. The movement which threw him was started by the foreman of the railway line, who was moving the car from the stables to its proper place, before the regular trips for the day. He did not know of the dangerous position of the gripman when the car started; it is held that the foreman was not guilty of negligence in starting the car, in the circumstances shown by the opinion.

2. ———: FELLOW SERVANTS. The foreman and gripman described in this case are not fellow servants within the meaning of the Missouri law.

3. **Practice:** CASE FOR JURY. In deciding whether plaintiff has a case for the jury, he is entitled to the most favorable interpretation of the facts that can reasonably be put upon them, as well as to every fair inference from those facts.

4. **Negligence:** ORDINARY CARE DEFINED. Ordinary care is such as ought reasonably to be expected of an ordinarily prudent person in the same situation as the person whose conduct is in question.

5. ———: SUDDEN STARTING OF CAR: WITHOUT ACTIONABLE FAULT. There is no positive law against starting a car suddenly; and whether or not such act is negligent must depend on the circumstances. In this case the sudden start is held to be without actionable fault on the part of defendant.

6. ———: RULES OF COMPANY: WHEN APPLICABLE. A rule of the railway company forbade anyone but the gripman to set the grip car in motion; but the rule is held not applicable to the foreman in bringing the car into place for service for the day's work.

7. **Negligence:** WHEN QUESTION OF LAW. Whether submitted testimony tends to establish negligence is a question of law to be decided by the court.

8. **Practice:** NO CASE: REVERSED. Plaintiff having no case on the merits the judgment is reversed on appeal without remanding.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED.

*Smith P. Galt* and *Sim. T. Price* for appellant.

The trial court erred in refusing to give defendant's instruction for a nonsuit offered at close of entire case. (1) Because there was no evidence to show that John Willum was guilty of actionable negligence that caused Barber A. Keown's injury. Patterson, Railway Accident Law, secs. 71, 268; *Strauss v. Railroad,* 75 Mo. 185; 16 Am. and Eng. Ency. Law, pp. 389–412; Cooley on Torts, 660; *Barker v. Railroad,* 98 Mo. 54; *Yarnell v. Railroad,* 113 Mo. 570; *Ring v. Railroad,* 112 Mo. 220; *Jackson v. Railroad,* 104 Mo. 457; *Rutledge v. Railroad,* 123 Mo. 136; *Weaver v.*

*Railroad*, 60 Mo. App. 207; *Moore v. St. Louis Wire Mills Co.*, 55 Mo. App. 496. (2) Because the evidence showed that John Willum and Barber A. Keown were fellow servants. *McGowan v. Railroad*, 61 Mo. 528; *Marshall v. Schricker et al.*, 63 Mo. 309; *Parker v. Railroad*, 109 Mo. 362; *Sullivan v. Railroad*, 97 Mo. 113; *Dixon. v. Railroad*, 109 Mo. 413; *Relyea v. Railroad*, 112 Mo. 86; *Sherrin v. Railroad*, 103 Mo. 378. (3) Because not only plaintiff's evidence, but the entire evidence conclusively and indisputably showed that Barber A. Keown's negligence was the direct and immediate cause of his injury. In such cases there can be no recovery. *Maher v. Railroad*, 64 Mo. 267; *Prewitt v. Eddy*, 115 Mo. 304; *Harlan v. Railroad*, 64 Mo. 480; *McKenna v. Railroad*, 54 Mo. App. 168; *Watson v. Railroad*, 34 S. W. Rep. 574; *Smith v. Railroad*, 52 Mo. App. 41; *Weber v. Railroad*, 100 Mo. App. 201; *Hudson v. Railroad*, 101 Mo. 13. (4) There was no causal connection shown between Barber A. Keown's injury as alleged and his death. *Schlereth v. Railroad*, 115 Mo. 110; *Yarnell v. Railroad*, 113 Mo. 570; *Wintuska's Adm'r v. Railroad*, 20 S. W. Rep. 819; 1 Sutherland, Damages, sec. 34; Patterson, R. A. L., p. 13.

*John A. Talty* and *A. R. Taylor* for respondent.

(1) John Willum was guilty of actionable negligence. *Hughlett v. Ozark Lumber Co.*, 53 Mo. App. 87; *Dayharsh v. Railroad*, 103 Mo. 570. (2) John Willum and Barber A. Keown were not fellow servants. Willum was the vice-principal of the defendant. Some of the cases cited by the appellant were decided years ago when the rule in Missouri was that all employees of a common master engaged in a common employment, who had no authority to employ and

discharge hands, were fellow servants. But this rule has long since been modified so as to exclude from the common service those who are clothed with authority to direct and control the movements of men placed under him. *Moore v. Railroad*, 85 Mo. 588; *Dayharsh v. Railroad*, 103 Mo. 570; *Hughlett v. Ozark Lumber Co.*, 53 Mo. App. 87; *Hutson v. Railroad*, 50 Mo. App. 300; *Smith v. Railroad*, 92 Mo. 359; *Miller v. Railroad*, 109 Mo. 350. (3) The law presumes that Keown at the time of the accident was exercising due care. *Flynn v. Railroad*, 78 Mo. 196. (4) Even if Keown saw Willum, he certainly had no reason to believe that Willum was going to carelessly and negligently start the cars with a "very sudden jerk and with full speed," in a way that "would have thrown any man off, even if he had a good hold." *Dixon v. Railroad*, 109 Mo. 413. (5) In assignment 4 appellant attempts to argue that there was no causal connection shown between Keown's injury and death. The proof is abundant and positive. *Hutson v. Railroad*, 50 Mo. App. 300; *Dayharsh v. Railroad*, 103 Mo. 576.

BARCLAY, P. J.—Mrs. Keown sued for statutory compensation on account of the death of her husband which is charged to have resulted from negligence of the defendant—a street railroad company—operating a train of cars on Broadway in St. Louis. The answer was a general denial, except as to the facts of defendant's incorporation and of Mr. Keown's employment by defendant. There was also a plea of contributory negligence, which plaintiff's reply put in issue.

The cause originated in the city of St. Louis, but was duly removed to the county of St. Louis, where it was tried with the aid of a jury. It appeared in evidence that Mr. Keown was injured March 16, 1892, in the following circumstances:

He was a gripman of defendant's car line, which was then operated by means of a cable. The accident occurred in the early morning, within a few minutes of 5 o'clock, when Keown was going to take his regular place for work on a grip car.

The car had just been drawn out of the car house in which it had been stored during the night. The house is on the east side of Broadway near Salisbury street. The defendant's line runs north and south on Broadway in front of the house. The tracks from the interior of the car house join the main line by means of curves. Just before the accident a grip car and a "trailer" (or ordinary passenger coach) had been drawn out of the car house by horse power. The trailer was left standing on the curve. The grip car was in front, on the east track of the main line, facing north. Both cars were at rest and were coupled together. There was an electric light hanging over the spot, or quite near. It was about daybreak. A man could be seen across the street, according to plaintiff's witnesses. There were lights on the grip car, as well as upon a south bound train, running on the west track of the main line at the time of the catastrophe. The "trailer" car was not lit up. In the trailer, as it stood on the curve, were the conductor and Keown, the gripman. The latter undertook to pass from the front step of the trailer to the grip car, on the west side of the cars. In doing so he took hold of the hand-rail on the trailer with his right hand and reached over with his left hand to the rail on the grip car. At that moment the cars were suddenly started, causing Keown to lose his hold, and to fall westward, so that he was struck by the south bound grip car of the passing train on the west track. The quick movement of the train was due to Willum's management of the machinery used to connect with the moving cable. Willum was

then at the gripman's post on the north bound car. He was the assistant superintendent of the defendant, commonly called the starter or foreman. His general duties were to attend to the receipts of each car, to assign the employees to cars, and generally to direct the practical operation of the line at that place, subject to one or two higher officials, who were present there only occasionally. It was Mr. Willum's special duty to see that the cars were brought out of the car house on time, and started for their regular trips with the proper men in charge. If a regular man assigned to a car did not appear in order to go on duty by the appointed time, Mr. Willum put a substitute (or "extra") in his place for the occasion. Keown was subject to the orders of Willum as to starting the car.

It was a general rule of the defendant that no one but the gripman should start the car; but the foreman Willum had full power to direct the movements of the men and to manipulate the grip, if need be, in getting the train into position for regular service. When Mr. Willum proceeded to start the grip car, he stood in the "box," or open space intended for the gripman. He then used a long iron hook, which he introduced through the slot into the conduit beneath the street, so as to lift the cable or "rope," permit the grip to catch on, and thus impart momentum to the car. It was not Willum's purpose to begin a regular trip, for the gripman Keown had not yet reported to take the car out, and no one had been assigned to his place. Willum's object evidently was to move the train only a short distance north, to clear the way for other trains to be brought out of the car house and made ready to start. According to plaintiff's testimony, the start of the grip car was too sudden and abrupt, and Keown in consequence was shaken off on the side toward the car going south on the west track. That car was going at a brisk

rate, and it struck Keown with such force as to injure him severely.   He died in December, 1893, as a result of the accident.

The following piece of evidence came out (without objection) on the direct examination of one of plaintiff's witnesses, viz:

"*Q.*  Immediately after the accident, did you have a talk with Willum about it?   *A.*  I stepped on the train as the train went out from the place where it was standing—I stepped on the car and went up there to Willum.   I went up to him because he was the man I expected to get work from, if any, and I spoke to him about the accident.   I said, 'Do you know there was a man got hurt back there?'   He said 'No,' and I said 'There was a man fell off the car as you started,' and he said something about starting the car a little quicker than he intended to."

There was no other testimony bearing on the question of Willum's knowledge of Keown's position at the time the grip car was started northward, except that of Willum, who [on behalf of defendant] testified that he did not see Keown before he started the car.

The foregoing statement presents the substantial facts of plaintiff's case on the merits, omitting only some merely formal matters.

On the defendant's side, the testimony tended to show that the car did not start suddenly, but gently, and that Keown was struck by the passing train on the west track, as he tried to swing from the trailer to the grip car.

The leading instruction given by the court to the jury at the instance of plaintiff was as follows (dropping only the parts which refer to plaintiff's relationship to the deceased and to the facts of his employment. and death):

"The jury are instructed that if you believe and find from the evidence that on" . . . . . . . "said sixteenth day of March, 1892, one John Willum was defendant's superintendent or foreman in and about the business of running and operating its cars, and had charge, control and direction of plaintiff and the other men engaged in the work of running and operating said cars; and that on said day said Willum got upon said train of cars and carelessly and negligently started the same suddenly with a jerk, when and while the said Keown was about to get upon said grip car, from the platform of the trailer car, and without giving any warning to said Barber A. Keown, and without said Barber A. Keown having any knowledge or reason to believe that said Willum was so going to start said train of cars; that by reason thereof said Barber A. Keown was thrown off of said train of cars and thereby and by reason thereof received great injuries, and that he died from the effects of said injuries on or about the seventh day of December, 1893; and if you believe that the said Barber A. Keown was not guilty of negligence, directly contributing to his injuries, and that the said Willum did not use and exercise ordinary care in starting said train of cars, then you will find a verdict for the plaintiff."

In the view we take of the case it is not necessary to copy any of the other instructions.

The jury found for plaintiff in the sum of $5,000, and defendant took an appeal in due course to the Supreme Court from the judgment that followed.

1.   We shall assume without discussion, for the purposes of this case, that the foreman, Mr. Willum, and the injured gripman, Mr. Keown, are not to be regarded as fellow servants, within the meaning of the existing law of Missouri, as interpreted in modern decisions of the Supreme Court.   *Gormly v. Vulcan Iron*

*Works* (1876) 61 Mo. 492; *Miller v. Railroad* (1891) 109 Mo. 350 (19 S. W. Rep. 58); *Russ v. Railroad* (1892) 112 Mo. 45 (20 S. W. Rep. 472).

2. The next question is whether or not Willum was guilty of a breach of duty toward Keown in starting the car. In treating the question we are bound to give plaintiff the benefit of the most favorable interpretation of the facts that can reasonably be put upon them, as well as of every fair inference from those facts.

The care which Willum was by law required to exercise toward Keown (as an employee under his orders) was ordinary care. What is ordinary care is to be determined by a due consideration of the facts and circumstances of the very situation in which Willum was placed. It is such care as ought reasonably to be expected of an ordinarily prudent person in the same situation as that of the individual whose conduct is in question in the particular case.

It might be highly negligent to start a car suddenly in circumstances which may easily be imagined and which are exhibited in reported cases. *Swigert v. Railroad* (1882) 75 Mo. 475; *Meriwether v. Railroad* (1891) 45 Mo. App. 528. But on the other hand the act might be free of fault, for there is no positive law forbidding it. The right to so start the car (in the circumstances shown in the case at bar) is subject to the limitations imposed by the facts which Willum either knew, or was bound to know, suggesting a danger from the sudden start to anyone lawfully near by. It must be remembered that the car was about to enter on its first trip of the day. It had not been turned over by the company to the employees who were to operate it. Keown had not yet reported for duty. The movement of the car northward was not the beginning of a regular trip. It was part of the steps preliminary to the business of the day.

It appeared affirmatively from a conversation between Willum and another man, immediately after the accident, and which conversation was given in evidence by plaintiff (without objection) that Willum was not aware of Keown's position when the car was started. Was he then bound to anticipate Keown's presence there, or to look toward the rear of the car for him before starting the car? It must be confessed that this query has given us some trouble to answer, and we express our conclusion upon it with some misgivings.

The cars were 'upon an important street. The catching of the cable for the start demanded Willum's close attention, and it required him to stoop low during the process of catching it. The anticipated forward movement of the car called for the man at the grip to keep an outlook ahead, to avoid the many risks of danger in that direction. Nothing had occurred to give Willum any intimation of the presence of anyone on or about the car before starting. *Straus v. Kansas City, etc., Co.* (1881) 75 Mo. 185. It was reasonable to expect Keown to appear at any moment to take his usual place. But there was no reason to expect his coming in the way he chose, and which made his unfortunate mishap possible.

It is our opinion that Willum was not guilty of any want of ordinary care toward Keown in starting the car suddenly in the circumstances.

The rule or practice of the company, not to permit anyone but the regular gripman to set the car in motion, did not apply to the movements made (or directed) by the managers of the company, and which were necessary to put the car into service for the business of the day, before the regular gripman reported for duty.

Conceding the full force of plaintiff's evidence, it

does not tend to prove the essential fact of a breach of duty toward Keown.

Whether submitted testimony tends to establish negligence is a question of law. Where the testimony does not have such tendency it is the duty of the court to so declare upon a proper request.

The learned trial court should have given the instruction asked, denying plaintiff a recovery on the merits. It is hence unnecessary to go into an inquiry as to the alleged contributory negligence of Keown.

The judgment is reversed, in which conclusion the writer concurs, referring to his observations in *Carroll v. Transit Co.* (1891) 107 Mo. 653 (17 S. W. Rep. 889) touching that disposition of cases of this sort. MACFARLANE, ROBINSON and BRACE, JJ., concur.

## ON MOTION FOR REHEARING.

PER CURIAM.—In the motion for rehearing plaintiff's counsel lay stress on the observation of the court that the original conclusion in the case was expressed "with some misgivings." From that remark it is argued that the question of defendant's negligence is one about which fair minded men might differ, and hence that it is one for the jury as a question of fact.

The "misgivings" of the court were as to whether or not the case was clear enough to warrant the decision of the issue of defendant's negligence as a matter of law. We do not dispute in the slightest the rule plaintiff asserts, as to the right of plaintiff to have the benefit of the most favorable view of the facts that may reasonably be taken of them. Giving plaintiff the benefit of that view, we had some doubts as to whether or not plaintiff had a case properly entitled to be submitted to the jury on the question of defendant's negligence. We finally reached the conclusion

that she had not such a case, after giving the facts the best consideration we could.    We did not intend, in announcing that result, to intimate any denial of the rule invoked by plaintiff touching the state of facts necessary to warrant the judgment originally ordered on this appeal.

But the question whether or not in any case given testimony tends to prove negligence is a question for the court.    And though it may sometimes be difficult of solution, the court is bound to solve the difficulty as best it can, and declare its ruling accordingly.    This division did so; and on reconsideration of the subject adheres to the judgment first announced.    The motion for rehearing is overruled, with the concurrence of all the judges of the first division.