## CHARLES McINTYRE v. LEWIS B. TEBBETTS et al., Appellants.

**In Banc, April 2, 1914.**

**VICE-PRINCIPAL: Fellow-Servant: Dual Capacity: Driver of Wagon.** The driver of a large wagon used in hauling carriages, buggies and other vehicles from defendants' factory to the depot where they were loaded into cars and shipped, was empowered to employ and did employ the men or crew needed by him in loading and unloading the vehicles, and managed that work, having control of the men and giving to them a statement of the number of hours each worked, and those were paid by defendants. He hired plaintiff and another on the day of the accident to assist in loading and unloading the wagon, and after it was loaded drove it to the depot. On the way he sent plaintiff with a bar to the office of defendants' shipping clerk, and told him he would wait for him across the railroad tracks. When plaintiff arrived at the point where the driver was waiting, he attempted to climb into the front part of the wagon, where he had previously been riding and was expected to ride. Just as he planted his foot on the hub of the front wheel and rose, throwing his weight on the hub, the driver started the team, throwing him off the wagon on the street and seriously injuring him. *Held*, that, in hiring the men and controlling their work in loading and unloading the wagon the driver was a vice-principal of defendants; but in driving the wagon, and at the immediate time of the accident, he was not a vice-principal, but a fellow-servant with plaintiff, and therefore plaintiff cannot recover for the injuries due to the driver's negligence.

*Held*, by WALKER, J., dissenting, with whom LAMM, C. J and BROWN, J., concur, that plaintiff at the time of the accident was acting in the line of his duty and under the supervision of the driver, and the driver's position throughout the whole transaction was that of vice-principal. His status should not be determined by one isolated act, but by all the facts in evidence which define his relations to plaintiff and defendants, viewed in the light of his admitted general authority in the premises.

Appeal from St. Louis City Circuit Court.—*Hon. George W. Shields,* Judge

REVERSED.

McIntyre v. Tebbetts.

*J. Lionberger Davis* for appellants; *Jones, Hocker, Hawes & Angert* of counsel.

(1) Defendants were not negligent. They had performed every duty which the law and the circumstances imposed upon them. Moore v. Railroad, 85 Mo. 588; Schaub v. Railroad, 106 Mo. 87; Browning v. Railroad, 124 Mo. 55; Card v. Eddy, 129 Mo. 510; Grattis v. Railroad, 153 Mo. 380; Jones v. Railroad, 178 Mo. 528; Livengood v. Lead Co., 179 Mo. 229; Edge v. Electric Ry. Co., 206 Mo. 471; Zellars v. Light Co., 92 Mo. App. 107; Railroad v. Baugh, 149 U. S. 368; Railroad v. Hambly, 154 U. S. 349; Railroad v. Keegan, 160 U. S. 259; Bradley v. Tea & Coffee Co., 111 S. W. 919. (2) The driver of the wagon was not negligent. (3) The driver of the wagon was not the vice-principal or *alter ego* of the defendants. The driver and plaintiff were fellow-servants. Lee v. Bridge Co., 62 Mo. 565; Marshall v. Schricker, 63 Mo. 310; Relyea v. Railroad, 112 Mo. 86; Glover v. Bolt & Nut Co., 153 Mo. 342; Hawk v. Lumber Co., 166 Mo. 121; Stephens v. Lumber Co., 98 Mo. App. 365; Stocks v. Transit Co., 106 Mo. App. 129; Koerner v. St. Louis Car Co., 107 S. W. 481; Strottman v. Railroad, 109 S. W. 769; and cases under points 1 and 4. (4) The act of the driver, if negligent, was the act of a servant as such. Moore v. Railroad, 85 Mo. 588; Dayharsh v. Railroad, 103 Mo. 570; Miller v. Railroad, 109 Mo. 350; Card v. Eddy, 129 Mo. 510; Grattis v. Railroad, 153 Mo. 380; Jones v. Railroad, 178 Mo. 528, 544; Livergood v. Zinc Co., 179 Mo. 229; Bane v. Irwin, 172 Mo. l. c. 310; Fogarty v. Transfer Co., 180 Mo. 490; Edge v. Electric Ry. Co., 206 Mo. 471; Garland v. Railroad, 85 Mo. App. 579; Zellars v. Light Co., 92 Mo. App. 107; Bien v. Transit Co., 103 Mo. App. 399; Stephens v. Lumber Co., 110 Mo. App. l. c. 405; Bokamp v. Railroad Co., 123 Mo. App. 270. (5) Plaintiff assumed the risk of the accident and consequent injury. Plaintiff

was guilty of contributory negligence. Schroeder v. Railway, 108 Mo. 322; Ross v. Railroad, 112 U. S. 377, 383; Railroad v. Baugh, 149 U. S. 368. (6) The court erred, therefore, in refusing to direct a verdict for the defendants as requested.

*William L. Igoe* for respondent.

(1) The question of whether the driver was a vice-principal or a fellow-servant was properly submitted to the jury. Fogarty v. Transfer Co., 180 Mo. 490; Bien v. Transit Co., 108 Mo. App. 414; Smith v. Car & Fdry. Co., 122 Mo. App. 610; Stephens v. Lumber Co., 110 Mo. App. 398. (2) The driver was negligent. (3) The negligence of the driver was the negligence of a vice-principal and the master is liable. Holweg v. Telephone Co., 195 Mo. 149; Donnelly v. Mining Co., 103 Mo. App. 349; Strode v. Conkey, 105 Mo. App. 12; Haworth v. Railroad, 94 Mo. App. 224. (4) The law imposes upon the master the duty not to expose his employee to unknown risks not ordinarily incident to his employment, and not to increase the hazards of his position. Dayharsh v. Railroad, 103 Mo. 576; Russ v. Railroad, 112 Mo. 50; Miller v. Railroad, 109 Mo. 357; Hollweg v. Telephone Co., 195 Mo. 149.

WOODSON, J.—The plaintiff brought this suit in the circuit court of the city of St. Louis, against the defendants to recover $10,000 damages for personal injuries received by him through the alleged negligence of the defendants.

A trial was had in the circuit court which resulted in a judgment for the plaintiff, for the sum of $2500.

After moving unsuccessfully for a new trial, defendants appealed the cause to the St. Louis Court of Appeals. The majority opinion of that court, written by Judge Goode, reversing the judgment of the circuit court, was dissented from by Judge Nortoni, and as a

result thereof the cause was transferred to this court; and upon reaching here it was assigned to Division No. 2, and there shared the same fate as it did in the Court of Appeals, and because of the latter dissent the cause was transferred to Court in Banc.

The case was again argued in Banc and after submission it fell to my lot to write the opinion of the court.

After having carefully read the record and briefs of counsel, as well as the various opinions written in the Court of Appeals and in Division No. 2 of this court, I have reached the conclusion that the majority opinion written by Judge Goode in the Court of Appeals correctly declares the law and properly applies it to the facts of the case, and his opinion, with certain additions to be made, will be adopted as the opinion of this court, and is as follows (formal parts omitted):

"Defendants are partners engaged in the manufacture of carriages. In their service was Joseph Kuhr, who was in charge of a freight wagon, his task being to drive the wagon and manage the helpers or crew which accompanied it. The wagon was a large vehicle, weighing when unloaded four thousand pounds, and having a bed very much wider than the usual width of wagon beds. One use of this vehicle was to haul surreys, buggies and other vehicles in which defendants dealt, from their factory or warehouse to the shipping stations of various railway companies in St. Louis, for shipment elsewhere. Usually six or seven crated vehicles were loaded in the wagon by the crew who went with it, hauled to the depot and unloaded there. Kuhr had command over employees who assisted in loading and unloading the wagon and accompanied it from the warehouse or factory to the depot, and besides directing these employees, he hired them. Three or four men were required to carry on the work of the wagon. A crew was not kept in regular employment, but when one was needed Kuhr would pick up and hire by the hour two or three men who were available and in the habit

of doing these odd jobs. The compensation allowed was seventeen and one-half cents an hour while they were at work. One of these men was plaintiff and he had been hired off and on four months; sometimes by Been, a clerk in one of defendants' warehouses, but oftener by Kuhr himself. Kuhr had also employed other men when he needed them to help with the wagon, and his right to hire such help was recognized by defendants. When he had finished the job for which he had employed a crew, he would give the men their time and they would go to the office and get their money. On the day of the accident Kuhr had to haul some vehicles from the factory to a railway depot for shipment and needing a relay of men to assist in the work, told plaintiff, who appears to have been waiting about the factory in the hope of a job, to hunt up another man named Tom Malloy, whom Kuhr was in the habit of using for similar work, and hurry back, as there was not much time in which to get the load into the car. Plaintiff found Malloy, and Kuhr and these two men loaded the wagon and started to the depot, or rather to the John Deere Buggy Company's warehouse or plant, through which the vehicles had to be carried to load them into the car. Their course took him in the vicinity of the shop where Been, the shipping clerk, was in charge. In the wagon was an implement known as a pinchbar, which Kuhr wished to leave at that shop; so he told plaintiff to take the bar to the shop, and meanwhile he (Kuhr) would drive across certain railway tracks at the point and wait until plaintiff returned. Plaintiff took the bar as told, and on coming back to the wagon attempted to climb in the front end where he had been riding and was expected to ride. Just as plaintiff planted his foot on the hub of the front wheels and rose, throwing his weight on the hub, Kuhr started the team, throwing plaintiff off the wagon on the street and injuring him seriously. Thus runs the evidence for plaintiff. In defense it is said Kuhr was a fellow-servant of plaintiff,

or, if a vice-principal part of the time, was a fellow-servant when he started the wagon and threw plaintiff off. This is the charge of negligence:

" 'Plaintiff says that on the said 29th day of January, 1907, and while in the performance of his duties as an employee of defendants; he was getting upon said wagon, and while he was upon one of the wheels of said wagon, the said "Joe" who was then and there acting for defendants and exercising his power to superintend, direct and control the operation of the said wagon, negligently and carelessly caused said wagon to be drawn forward, without warning or notification to plaintiff, although the said "Joe" knew, or by the exercise of proper care might have known, that plaintiff was on the wheels of said wagon and about to climb upon said wagon. Plaintiff states that in consequence of the negligent and careless movement of said wagon as aforesaid he was thrown violently to the ground, and his right leg and right side bruised and the sight of the right eye permanently destroyed and causing him great bodily pain.'

"The court refused to direct a verdict for defendants and refused to declare Kuhr was a fellow-servant of plaintiff at the instant of the accident. At defendants' request the jury was told no presumption of negligence on the part of defendants arose from the fact of the accident, but the burden was on plaintiff to show he was injured because of defendants' negligence in starting while plaintiff was attempting to get into the wagon; that it was not negligence to start if defendants did not, or by the exercise of ordinary care would not, have known plaintiff was attempting to get in at the time; that if plaintiff slipped and fell, but not as the result of any act of defendants or its agents or servants, the verdict must be for defendants. On the issues of whether or not Kuhr was a vice-principal usually, and whether he was acting as vice-principal or fellow-servant when he drove forwrd just as plaintiff was stepping

into the wagon, the court gave these instructions, to which defendants excepted:

" 'The court instructs the jury that if you find and believe from the evidence that Joseph Kuhr was employed by defendants and 'was a foreman in charge of the team and wagon in question, and the man employed on and about said wagon, and by virtue of his employment and position had immediate control and direction of plaintiff and others engaged in working on and about said wagon and had authority to direct and control plaintiff's work, then the said Joseph Kuhr was a vice-principal and was not a fellow-servant of plaintiff.

" 'The jury are instructed that if the negligence of a foreman arises out of and is the direct result of the exercise of authority conferred upon him by the master, as a foreman, the master will be liable for such negligence, but if the negligence complained of consists of some act committed or done by him which relates to his duties as a co-laborer with those under his control, and which might just as readily have happened with one of them having no such authority, their employer will not be liable. If you find and believe from the evidence that plaintiff on or about the 29th of January, 1907, was in the employ of defendants and that while so employed and while acting in the line of his duties he was getting upon the wagon in question and while upon one of the wheels of said wagon, said wagon was started forward by the driver Joseph Kuhr and that plaintiff did not know that said wagon was about to be moved and that no notice or warning was given him of the moving of said wagon and that the starting forward of said wagon was the direct cause of the injuries to plaintiff, and if you further believe from the evidence that the said Joseph Kuhr was a foreman or vice-principal of defendants as defined in instruction No. 1, and that in starting said wagon forward the said Joseph Kuhr was in the exercise of his authority and not merely in the discharge of his duties as a co-laborer

of plaintiff, and if you further find that at the time of receiving said injuries, plaintiff was himself exercising ordinary care and prudence, then your verdict will be for the plaintiff.'

"A verdict for $2500 was returned in plaintiff's favor and judgment having been rendered in accordance with it, this appeal was taken.

"Kuhr was foreman of the wagon crew and the other members were under his authority. The wagon was, so to speak, a detached place of operation where part of defendants' business was carried on under Kuhr's control. He was empowered to employ men for his crew, regulate their work and let them go at his pleasure. Those facts were presented in the first instruction, and the jury were told if they found them to exist, Kuhr was a vice-principal and not a fellow-servant of the plaintiff. The court did not err in this ruling. [Miller v. Railroad, 109 Mo. l. c. 357; Russ v. Railroad, 112 Mo. 45; Edge v. Electric Ry. Co., 206 Mo. 471.] We will say all the instructions strike us as accurate and fair, and if the case should have gone to the jury on the questions of whether Kuhr was a vice-principal or fellow-servant, and in which capacity he was acting at the moment of the accident, the issues were well presented. The main part of Kuhr's task was to drive the wagon and team. He did this as well as control the hauling and giving orders to the men. Hence he discharged two-fold functions, and the principal inquiry is whether the entire evidence proved he was acting as a common member of the wagon crew at the instant he drove forward and caused plaintiff's hurt, or as vice-principal. Counsel for defendants insist the evidence shows beyond inference to the contrary, the starting of the wagon was an act incident to his ordinary duties as driver, and in no sense an exercise of his authority as foreman. The leading opinion in this State on what is denominated the dual capacity doctrine, is Fogarty v. Transfer Co.,

180 Mo. 490, wherein it appeared the driver of a freight wagon had been injured by the negligent act of a foreman. Many of the facts were like those we have here, but one distinguishing circumstance appeared. Said foreman took the lines from Fogarty and undertook to back the wagon himself; thereby assuming, by virtue of the authority vested in him as foreman to supersede the regular driver in the performance of a task the foreman had not been performing before, and in the course of which he hurt the driver. In the case at bar, when Kuhr started the team forward and hurt plaintiff, he simply continued to drive; for, properly considered, he was driving while he held the lines as the wagon and team stood waiting for plaintiff. It is plain the careless act of the foreman in the Fogarty case wears more the appearance of an exercise of mastery than does Kuhr's as the opinion shows (l. c. 512); and hence it does not follow the capacity in which Kuhr acted was for the jury, merely because the Supreme Court held the question of capacity was for the jury in the Fogarty case. In Bien v. Transit Co., 108 Mo. App. 399, this court approved the submission of a like question on the authority of the Fogarty opinion, and it is charged now by counsel for the defendant that in doing so we misled the court below in the present case into submitting to the jury what was really a court matter. The facts of the Bien case regarding the magnitude and complication of the affairs controlled by the foreman who figured therein are so unlike those before us as to put that authority out of point; but we seize the opportunity to call counsel's attention to the fact that the Supreme Court in Hollweg v. Tel. Co., 195 Mo. 149, and Edge v. Railroad, 206 Mo. 471, 494, approved and quoted from the opinion in the Bien case. Counsel say we misconceived the import of the Fogarty case in holding it was applicable to an accident that had happened in this State, because the Supreme Court held the question was a jury one in obedience to the law of Illinois

where the Fogarty accident happened. This contention is unsound. The Supreme Court showed in the Fogarty opinion (l. c. 511) the law of Illinois and the law of Missouri as regards when the issue of vice-principal or fellow-servant is for jury or court, are not different. The courts of Missouri and Illinois hold alike on this matter, and that the question is for the jury when the facts are in dispute or reasonable men may come to different conclusions from them, and is for the court when the evidence will permit but one conclusion. [Norton Bros. v. Nadebok, 190 Ill. l. c. 599.] What we have said supra is more by way of answer to the attack of counsel on the opinion in the Bien case than in decision of this one.

"Some of the early Missouri opinions either explicitly or implicitly refused to determine the master's liability for an injury to an employee by a co-employee, upon the theory that a superior servant or foreman might do twofold duties, and the master be liable for his carelessness while engaged in the performance of one class of duties, because the superior servant was then exercising the master's authority, and not be answerable in the other class, when he was performing duties common to him and the injured servant. [Hutson v. Railroad, 50 Mo. App. 300; Hughlett v. Lumber Co., 53 Mo. App. 87; Dayharsh v. Railroad, 103 Mo. 570; Russ v. Railroad, 112 Mo. 45.] We will not examine the facts and doctrine of those cases, because the dual-service theory is established as the law of the State by the recent decisions. [Fogarty v. Transfer Co., supra.] Lawyers disagree in their opinions about the soundness of that doctrine, but if it is to be a rule of decision, the facts of the present case invoke it with peculiar force. Unlike the foreman in the Bien case, Kuhr was charged with the regular performance of common duties; wherein he was a co-worker with the wagon crew. The rule is more acceptable in such a case than where the foreman or vice-principal was not charged with any service com-

mon to other employees, but of his own volition under-
took an act of common service and in performing it.
hurt a workman. Long reflection has failed to reveal
how Kuhr's act of driving forward involved an exercise
of authority. It seems to us to have been beyond
doubt an act of common service which was done in the
course of his ordinary task. We cannot imagine a case
wherein a person who is both foreman and common
employee could do an act more clearly pertaining to the
latter capacity rather than foremanship, than was
Kuhr's starting the team. The causal act of Kuhr was
within the description in Bane v. Irwin, 172 Mo. 306,
317, of what is a fellow-servant's act though done by
one who is foreman, too. 'We agree with counsel for
defendant, "It is the *act* and not the *rank* of the vice-
principal which determines whether two employees are
fellow-servants." In this case the acts of Gibbs were
the acts of the master. It is true that, according to the
evidence, Gibbs at times did the work of a servant in
loading and firing the shots, and had the injury oc-
curred while he was performing a servant's duty, he
and plaintiff would have been fellow-servants, but it is
clear that the negligence in this case was the
negligent order to plaintiff to return to the
dangerous place and fire the remaining shot
and the injury was the consequent result of that
order, and not the negligent loading and tamp-
ing of the shot. While Gibbs acted in a dual capac-
ity, the injury here resulted from the order in making
which he represented the master.' We are cited to
Hollweg v. Tel. Co., 195 Mo. 1. c. 166, as an authority
for plaintiff. In that case the foreman of a depart-
ment caused an injury to a fellow employee, by making
the place where the latter worked unsafe during the
temporary absence of the regular operator of the ma-
chine. The foreman attempted to operate the machine,
left a block of wood on the table and this block was the
cause of the injury. Said case may rest on the ground.

that the master's non-delegable duty to use ordinary care to furnish the servant a safe place to work, was broken. The Dayharsh case was distinguished on the same ground in the Fogarty opinion which examines and discriminates the various Missouri decisions.''

In addition to what has been said by the Court of Appeals regarding the law of this case, I wish to add the following observations:

The record shows that the main duty of Kuhr, in fact practically all of his duties, were that of a common laborer, engaged to haul and deliver buggies and carriages to various depots in the city of St. Louis, but occasionally, when extra help was needed to unload the buggies and carriages, either he or one Been, a clerk in the office of the defendants, would employ one or two persons for a few hours for that purpose, which in all probability did not take more than five minutes a week of Kuhr's time, and all the remainder of his time and duties, as previously stated, were devoted to hauling and delivering the vehicles mentioned.

The legal proposition here presented is, did the devotion of that five minutes, or whatever number they may have been, in occasionally employing those men, constitute Kuhr a vice-principal in the control and management of that entire business? I think not.

Suppose Kuhr had never employed any men at any time, but they had always been employed by Been exclusively, could it then be said that Kuhr was a vice-principal simply because he was the driver of the team and assisted in unloading the vehicles? I again say no; and if that is not true, then every employee would be a vice-principal.

Again suppose in this particular instance Been had employed the plaintiff instead of Kuhr, would that fact have constituted the laborer a vice-principal? I think not; no more than where a farmer employs two men to gather corn and directs one of them to drive the team and wagon. In each case they would be fellow-servants

and that relation would not be changed even though the other party had been employed by the driver, at the request of the farmer, except as to the act of employment. In all other respects they would be fellow-servants. I think this cannot be seriously questioned; and by parity of reasoning the same rule should and does apply to the case at bar. The plaintiff and Kuhr, at the time the former was injured, were engaged in a common employment, namely, the hauling and delivery of the carriages, and the mere fact that Kuhr had some hours before employed plaintiff to assist him in doing that common work did not change their legal relations.

The case of Dayharsh v. Railroad, 103 Mo. 570, cited by Judge GOODE, is not in point, as he properly ruled, for in that case the hostler in charge of the roundhouse and whose negligence caused the injury was unquestionably, and at all times, a vice-principal. But as previously stated, in this case, there was not a semblance of such relation existing between plaintiff and Kuhr, nor had there ever been except the brief moment that was taken by the latter to request the former to assist him in hauling and unloading said vehicles.

I am, therefore, clearly of the opinion that the majority opinion of the Court of Appeals correctly declared the law of the case, and so believing, the judgment of the circuit court should be reversed.

*Graves, Faris* and *Bond, JJ.,* concur; *Walker, J.,* dissents in separate opinion in which *Lamm, C. J.,* and *Brown, J.,* concur.

## DISSENTING OPINION.

WALKER, J.—I dissent from the conclusion reached in the majority opinion that Kuhr, the driver of the team, was not a vice-principal at the time plaintiff received the injuries which constitute the basis of this action. So pronounced is Kuhr's general relation

as a vice-principal to plaintiff and the other employees that the St. Louis Court of Appeals, in its statement of the facts, found it necessary to say when this case was reviewed by that court, 140 Mo. App. 116, that: "Kuhr had command over the employees who assisted in loading and unloading the wagon and accompanied it from the warehouse or factory to the depot, and besides directing these employees he hired them;" and in its opinion following the statement of facts the said court further says: "Kuhr was foreman of the wagon crew and the other members were under his authority. . . . He was empowered to employ men for his crew, regulate their work and let them go at his pleasure." These indubitable facts are admitted in the same words in the majority opinion, which holds nevertheless that Kuhr and the plaintiff were, at the time the latter received the injuries, fellow-servants, and hence defendants are not liable.

This court has many times defined the term vice-principal. One of the recent definitions, not different in principle from the others, but to be commended for its terseness, is that "a vice-principal is one entrusted by the master with power to superintend, direct or control workmen". [Burkard v. Leschen & Sons Rope Co., 217 Mo. 466.] It is said in this same case (Syl. 2) that "if plaintiff was under the control and direction of another one of defendant's employees, who directed him what to do and was his superior in the particular work they were performing at the time, although they worked together at the same common work, they were not fellow-servants, but the other was the defendant's vice-principal." In an earlier case (Moore v. Railroad, 85 Mo. 588) often subsequently approved, it is held that fellow-servants are those engaged in the same common work without any dependence upon or relation to each other except as co-laborers without rank. [See also Burkard v. Rope Co., supra.] These definitions are hallmarks in the law of Master and Servant, but it

is not inappropriate that they should be posted here preliminary to a presentation of the facts from which we will be enabled to determine the relation of Kuhr to plaintiff and the other employees, regardless of the admissions.

The facts are as follows:

That Kuhr hired the plaintiff; that he was authorized to direct and did direct plaintiff's labor; and that he was in the exercise of this authority when he ordered plaintiff to leave his place on the wagon, while *en route* to the point of unloading, and take the pinch bar, an instrument which had been used in the labor, to the shop and to hurry back as there was not much time to get the load into a car.  Plaintiff was in the immediate line of his duty when returning from said errand, he attempted to mount the wagon at a point where Kuhr said he would wait for him; in attempting so to do, plaintiff was injured by the precipitate starting of the wagon by Kuhr, just as plaintiff placed his foot on the hub for the purpose of resuming his former position to accompany the wagon to its destination where he was, under Kuhr's direction, to assist in unloading same. Throughout the entire transaction, therefore, there runs plain as a pikestaff, the impress of Kuhr's authority; true, his mere starting or stopping of the wagon was, in itself, the act of an employee, or, if you choose, a fellow-servant; but this act alone, under a fair interpretation of the evidence, as we view it, does not determine the character of Kuhr's relation to plaintiff during the period of the latter's employment, but all of the pertinent facts are to be considered together so as to form, if possible, a connected and harmonious whole which will support a reasonable conclusion as to the nature of the relation.  Every other fact except the starting of the wagon points directly to Kuhr's dominance over the plaintiff during the employment, and to hold that Kuhr was not a vice-principal at that moment necessitates a severance or separation of that act, at the in-

stant of its occurrence, from all the other facts in the case, followed as is shown by the testimony, by a resumption of Kuhr's right of supervision immediately thereafter. As we have stated, it is admitted by the majority opinion that Kuhr's general relation to plaintiff, except at the instant of starting the wagon, was that of a vice-principal. Whether admitted or not, it is, in our opinion, a conclusion which flows naturally from the facts. If this be true, then Kuhr, at the moment he started the wagon, occupied, under the facts here, the the same relation to plaintiff as at other periods of the employment. This is clearly demonstrable. Kuhr's status or relation was dependent upon his authority to employ plaintiff, his supervision of plaintiff's work during such employment, with the added authority to discharge plaintiff, whether at his will or when the work was completed, is not material. All of these requisites to the creation of the status of a vice-principal existed not at intervals during the employment, but throughout the continuance of same, whether plaintiff was assisting in loading or unloading the wagon or climbing on or off of same, if at the time plaintiff was acting in the line of his duty and under the supervision of Kuhr, facts which are not gainsaid. Kuhr in the prosecution of the work in which they were engaged, was empowered, not as a teamster, but as a representative of the master to stop or start, not only the wagon, but the entire work as he willed. In the exercise of this power he halted the progress of the wagon *en route* to the station to enable plaintiff to take the pinch bar to the shop and return and assist in the unloading; in the further exercise of this power, with a knowledge of plaintiff's return and his attempt to mount the wagon, Kuhr negligently started same, resulting in plaintiff's injuries. In the presence of these facts, we do not feel that we are authorized in isolating one of them, in no wise different from the others, in order that it may be held that Kuhr at the time of the accident was a fellow-

servant, when at all other times he was clearly a vice-principal. The conclusion in the majority opinion cannot as we read the evidence, be reached by any other method of reasoning; and we respectfully submit that it is not the correct one. To recapitulate: Kuhr's status as a vice-principal or fellow-servant should be determined not by one isolated act, but by all the facts in evidence, which define his relations to plaintiff and the other employees, viewed in the light of his admitted general authority in the premises.

If, as we have contended, Kuhr was a vice-principal, the doctrines in regard to dual capacities and superior servants may be eliminated from consideration as simply serving to obscure the issue. The evidence discloses none other than the relation of complete dominance by Kuhr over plaintiff and the other employees. This being true, it is not material that Kuhr usually in his relations towards the master, but never towards plaintiff or the other employees, occupied the relation simply of a common teamster. What does it matter, under this state of facts, whether the defendants themselves or Kuhr, their *alter ego,* started the wagon? Under either, defendants' liability is the same.

In brief the crucial difference between the majority and this opinion is the construction placed on Kuhr's act in starting the wagon; the majority opinion holding that it was the act of an ordinary teamster who bore no relation to the other employees than that of a colaborer, and that this relation is determinable from the fact that he was acting as a teamster at the particular moment plaintiff was injured; while we contend that his relation should be determined, not by this one act, but from all of the facts bearing on his authority, including, of course, this act and all others. In other words, is the truth of a matter in issue (in this instance the nature of a relation) to be determined by one or all of the facts in evidence; if the latter, then we insist that Kuhr was a vice-principal at the time of

starting the wagon, and that defendants are liable for plaintiff's injuries.

NORTONI, J., of the Court of Appeals, supplements his dissenting opinion in this case by certifying same to this court on the ground that the ruling in the majority opinion in said court is in conflict with Dayharsh v. Railroad, 103 Mo. 570. In that case, one Stephens, a "night hostler" (which meant in that connection one charged with the care of locomotive engines while in the roundhouse at night) was authorized to supervise and direct the labor of others engaged with him in the performance of his duties. While one of the men was underneath an engine shoveling out cinders, Stephens started it and crushed the former's ankle. These colaborers were held not to be fellow-servants, but that Stephens's right of dominance made him the representative of the master, and that the latter was, therefore, liable for the injury, although at the moment of its occurrence Stephens was engaged in ordinary labor. In no material particular does this case differ from the one at bar, save in the instrumentalities causing the injuries, and we agree with the learned judge of the Court of Appeals in his dissenting opinion that the result here should be the same as in the Dayharsh case, so far as regards the determination of the relation of the actors in each case.

In Russ v. Railroad, 112 Mo. 45, a section foreman charged with the supervision of a number of men on a line of railway and a colaborer with them, directed a keg of water to be placed on a handcar, and while he and the others were propelling same it was derailed by the keg falling off on the track, and plaintiff, one of the laborers, was injured. It was held that the foreman was a vice-principal and that the master could not escape liability because the foreman was at the time of the accident engaged with the others in the ordinary labor incident to their employment.

The ruling in the Russ case (supra) is approved under a somewhat similar state of facts in Boyd v. Railroad, 236 Mo. 54, 80.

Hollweg v. Bell Telephone Co., 195 Mo. 149, is a kindred case to the one at bar. Hollweg, while operating a machine under the general direction of a foreman engaged in like labor, was injured. It was held that the foreman was a vice-principal and the fact that he had a few moments before the accident been operating the same machine as a colaborer of Hollweg, did not lessen the master's liability.

But why burden the record with the citation of further authorities in support of the conclusion we have reached? Viewed from our vantage, they clearly support the result of our reasoning; viewed from that of the author of the majority opinion (whose learning and judgment we generally appreciate and admire) they do not. Precedents, at best, are but persuasive, and, after all, the conclusion in each case must rest primarily upon its own facts. Thus buttressed, we can reach no other conclusions in this case satisfactory to our conscience and judgment than that Kuhr was a vice-principal at the time of plaintiff's injuries, and that the defendants are liable therefor. As a consequence, it follows that the judgment of the Court of Appeals should be reversed, and that of the trial court affirmed. *Lamm, C. J.,* and *Brown, J.,* concur in this opinion.