# MOORE v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, February 22, 1906.

1. STREET CAR: Jumping Track: Defective Rail. Where there was substantial evidence tending to show that the proximate cause of the accident, in which a street car jumped the track and injured the plaintiff conductor, was a defective rail, the court will not set aside a verdict for him, although the evidence also shows that the car, notwithstanding the defective rail, would not have jumped the track had care been taken to sufficiently slow down the speed.

2. ———: ———: ———: Excessive Speed: Motorman's Concurring Negligence. A master is liable to a servant injured by the master's negligence, even though the negligence of a fellow-servant contributed to the result. Hence, if the motorman of the street car which jumped the track and injured the conductor was negligent in running the car too fast at the curve where the accident occurred, yet if that negligence united with the master's negligence in permitting a defective rail at the point, to produce the accident, the master is liable.

3. ———: ———: ———: ———: Imputed to Conductor. It is not the duty of a street car conductor to direct the speed of the car at every point. The negligence of the motorman in running the car too fast at a curve, in this case, cannot be imputed to the conductor.

4. **INSTRUCTION:** Assumption of Negligence.   An instruction does not assume that a rail on the track was defective, which leaves that fact to be found by the jury from the evidence, and makes the finding of that fact essential to plaintiff's right to recover.

5. ———: Contributory Negligence of Fellow-Servant.   An instruction for plaintiff which leaves out of view the supposed contributory negligence of a fellow-servant, but charges plaintiff with the consequences of his own fault if any is found, is not incorrect.

6. ———: Inconsistent With Others Given.   An instruction for plaintiff, itself correct, is not erroneous if in conflict with erroneous instructions given for defendant.

7. ———: Negligence: Master and Servant:   Running Car on Schedule: Ordinance.   The city ordinance fixed the maximum rate of speed of a street car at eight miles an hour, and there was evidence that the schedule time was fifteen miles an hour. Plaintiff, a conductor on the car, was injured by the car's jumping the track.   *Held,* that the defendant company cannot hold the conductor responsible for running the car at the schedule rate and in excess of the ordinance rate, even if it was the conductor's duty to regulate the speed of the car at the point where the accident occurred.   An instruction, therefore, which assumes that it was the conductor's duty to obey the ordinance, rather than defendant's order, in a suit between him and it, should not be given.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

Affirmed.

*Boyle, Priest & Lehmann, George W. Easley* and *Edward T. Miller* for appellant.

(1) The demurrer to the evidence should have been sustained.   Alcorn v. Railroad, 108 Mo. 99; American Brewing Co. v. Talbot, 141 Mo. 683; Epperson v. Railroad, 155 Mo. 382; Minnier v. Railroad, 167 Mo. 99; Fuchs v. St. Louis, 167 Mo. 620; Sams v. Railroad, 174 Mo. 53; Furber v. Bolt & Nut Co., 185 Mo. 301; Goransson v. Mfg. Co., 186 Mo. 300; Breen v. Cooperage Co., 50 Mo. App. 202; Smart v. Kansas City, 91 Mo. App. 586; Stearnes v. Spinning Co., 184 Pa. 523; Searles v.

Railroad, 101 N. Y. 661; Bond v. Smith, 113 N. Y. 376; Dobbins v. Brown, 119 N. Y. 198; Pauly v. Steam Co., 131 N. Y. 90; Linhauf v. Lombard, 137 N. Y. 417; Robert v. Railroad, 154 N. Y. 90; Ray on Neg. of Imposed Duties, pp. 133-134; Webb's Pollock on Torts (En. Ed.), 45-46; 2 Labatt, M. & S., secs. 803, 804, 832 to 837; Godfrey v. Railroad, 107 Mo. App. 193. In the first place, plaintiff failed to establish the charge of negligence made against defendant. The only testimony as to the condition of the rail was that it was worn. Plaintiff should have offered evidence to show that it was dangerous to operate cars around a curve where the rail is in that condition. The mere existence of a worn rail, which plaintiff's evidence shows must naturally result from the operation of cars over it, cannot be held as a matter of law to be negligence, and the fact that the car left the track at the entrance to the curve is not sufficient to sustain the burden of proof cast upon plaintiff. 2 Labatt, M. & S., secs. 803, 833, 837; Stourbridge v. Railroad, 41 N. Y. Supp. 128. In the second place, plaintiff failed to prove that defendant was guilty of negligence which was the proximate cause of the injury. Goransson v. Mfg. Co., 186 Mo. 307; Epperson v. Railroad, 155 Mo. 382. In the third place, plaintiff not only failed to prove that defendant was negligent, and that that negligence was the proximate cause of the injury, but also failed to prove defendant's knowledge of any dangerous condition existing. 2 Labatt, M. & S., sec. 832. In the fourth place, defendant complied fully with its duty to plaintiff to exercise ordinary care to furnish him a reasonably safe track upon which to operate his car, as shown by the mass of testimony offered by plaintiff. (2) The requested peremptory instruction should have been given. Bank v. Bank, 151 Mo. 329. The court erred in giving plaintiff's instruction 1. This instruction assumes that there was a defective rail in the track, and presented to the jury the issue: Was the accident caused by this defective rail,

and had it existed long enough for defendant to make the necessary repairs thereto, or was the accident caused by fault on plaintiff's part? The jury should not have been told that there was a defective rail in the track, but should have been required to find that there was a worn rail there and that it was dangerous to operate cars over it in a prudent manner, and that defendant knew these facts. Plaintiff's own witnesses, Lawrence and Bangs, testified that they examined it and found nothing the matter with it. The instruction not only assumes that the rail was worn, but also that it was defective, and that the defect made it dangerous to operate cars over it in a prudent manner. Fullerton v. Fordyce, 121 Mo. 13; Minnier v. Railroad, 167 Mo. 99. Again, the instruction is erroneous in limiting defendant's right to a verdict to the fault of plaintiff himself instead of that also of the motorman, his fellow-servant. Sams v. Railroad, 174 Mo. 53; Godfrey v. Railroad, 107 Mo. App. 193. Again, the instruction is in conflict with defendant's fourth and seventh, which properly declare the law. By plaintiff's instruction his motorman's negligence did not defeat a recovery; by defendant's instructions it did. This irreconcilable variance constitutes reversible error. Mansur-Tebbets Co. v. Ritchie, 143 Mo. 587; Shepherd v. Railroad, 87 S. W. 1007.

*Ernest E. Wood* for respondent.

Respondent will simply answer the brief of appellant and will discuss only the three points argued by appellant. (1) Plaintiff showed by competent evidence that the rail was worn and defective and that it was dangerous to operate cars over it, and further proved that appellant knew of the said facts. Appellant states that plaintiff offered no evidence to show that it was dangerous to operate cars over such a track. Proof that several other cars had gone off the track at the

same place where the rail was shown to be worn and flattened is evidence that the track was dangerous. (2) Appellant attacks the first instruction given for plaintiff stating that the instruction assumes that there was a defective rail on the track. This is certainly not the case. The instruction tells the jury that if they believe from the evidence that plaintiff was injured by reason of the car leaving the track on account of the defective rail of said track, etc. The jury must believe from the evidence. The jury were not told that there was a defective rail on the track. But even if that were true, the field is covered so thoroughly by defendant's ten instructions, and its rights were so well protected by these ten instructions, that appellant's point would be weak even if the instruction were as it states. Only two instructions were given for plaintiff, and one of these related to the measure of damages. Ten instructions were given for the defendant and these ten instructions did not in any way leave the jury in doubt as to any possible right of defendant, but so thoroughly protected the interests of defendant that it is almost strange that the jury should have found in favor of plaintiff at all. In view of the instructions the finding of the jury is accounted for only by the very strong evidence presented in favor of plaintiff. It might be well to note that one or two of the instructions given for defendant were absolutely erroneous, but since the jury were not misled by them, and since the verdict was for the right party, no harm has been done.

VALLIANT, J.—Plaintiff was in the service of the defendant, in the capacity of a street car conductor. On August 20, 1902, the car on which plaintiff was serving jumped the track and turned over, throwing him out and severely injuring him. The amended petition charges that the accident was caused by a "broken, worn and defective rail" in defendant's track, of which

defendant had, or ought to have had, notice and negligently failed to repair.

The testimony for the plaintiff tended to prove as follows:

The defendant has a double-track street railroad along Grand avenue. Going south there is a curve towards the east in the tracks to conform to the curve of the street, extending from Alberta to Osage street. It is not a sharp curve, as if turning at a right angle into a cross street, but a long curve, the precise angle of which was not shown. On August 20, 1902, the car on which plaintiff was conductor was going south; when it struck this curve it jumped the track and after running along on the ground the length of the car or more it turned over on its side. It was a summer car with crosswise seats. The plaintiff was standing between the second and third seats from the rear, he was thrown to the ground, part of the car fell on him and inflicted serious injuries, the details of which it is unnecessary to mention, since no point on that account is made in the brief of appellant. The rail in the track at that point was much worn—rounded as one witness said, flattened as another said, badly worn as others expressed it, rendering it less capable of holding the car, and liable to cause such an accident. Several other cars had shortly before this been derailed as this was at that point. This condition had existed for two months or more and was known for that length of time to the defendant's roadmaster, who had called the attention of some of the motormen to it, and had cautioned them to be careful to run slowly through that curve. Cars could be run, using care, at a rate of six or eight miles an hour, safely through the curve, and the plaintiff had for months past been, daily, going through it safely with his car and had done so several times that day. Not all of the plaintiff's witnesses testified that the rails were badly worn, some of them said they were only slightly worn,

one said that even a new curve rail would in a short while. become slightly worn.

At the time of the accident this car was running ten or twelve miles an hour, but it was within the schedule time. The motorman testified that as he approached the curve he slowed down, he did not state just how fast he was going when he struck the curve, but did say it was over six miles an hour, and faster than a man would walk.

Defendant introduced in evidence the original petition of the plaintiff in which, in addition to the defective rail as charged in the amended petition, it was alleged that the car was running at the rate of twenty-five miles an hour in violation of a city ordinance forbidding it to run faster than eight miles an hour, and also that the car was defective. Defendant also introduced the city ordinance referred to, and the following rules of the company: ''Reduce speed of car to a walk before entering a curve,'' etc: ''The conductor will have full charge of the car when on duty, excepting such work as pertains to the care and operation of the motor, and the motorman 'is expected to obey his orders by bell or otherwise.'' Defendant also introduced evidence tending to show that the rails at that point were but slightly worn, and cars could and did safely pass through the curve at a rate of six or eight miles an hour.

An expert witness for defendant testified that if a car running ten or twelve miles an hour should be derailed going into a curve it would be owing to the speed of the train, and would not indicate a defective rail.

At the close of the plaintiff's case and again at the close of all the evidence, the defendant asked an instruction looking to a nonsuit which was refused and exception taken.

The trial resulted in a verdict for the plaintiff for $5,000, and defendant appealed.

## I.

There was substantial evidence tending to show that the proximate cause of the accident was the defective rail. And whilst the evidence also shows that, even with the defect, the car could have been moved through the curve if care had been taken to sufficiently slow down the speed before striking the defective rail, yet there was sufficient in the evidence to justify the jury in concluding that there would have been no accident if the rail had been in proper condition. Conceding that the motorman was negligent in running into the curve faster than he should (although that does not clearly appear), still there is nothing in the plaintiff's evidence to show that the rate at which he was going would have produced the result if the rail had been in proper condition. If the motorman was negligent in this respect, the most that can be said of it is that his negligence united with that of the defendant to cause the accident. A master is liable to his servant who is injured by the master's negligence even though the negligence of a fellow-servant of the one injured contributed to the result. [Cole v. Railroad, 183 Mo. 81, l. c. 94, and cases there cited.]

If the car was run into the curve at a rate of speed that was, under the circumstances, negligent, it was not the fault of the plaintiff, the conductor, because although under the rules of the company he had general charge of the car, yet it was not in the nature of his duties to direct the speed of the car at every point. His duties were to be elsewhere than on the front platform and otherwise than observing the track and noting when to slow down and when to increase speed. Those duties in their detail naturally belonged to the motorman and by the rules of the company read in evidence were expressly excepted from the duties of the conductor. It may be that the conductor would have authority, when a condition arose that required it, to order the motor-

man to slow or speed the car, but such authority would not imply that he was expected to direct the speed of the car at every point or when there was nothing especial arising to call for an interposition of his authority. The negligence of the motorman, therefore, if there was such negligence, was not the negligence of the conductor. The court did not err in refusing the instruction looking to a nonsuit.

## II.

At the request of the plaintiff the court gave this instruction:

"The court instructs the jury that if they believe from the evidence that plaintiff was employed as a conductor on one of the cars owned and operated by the defendant, and that he was injured by reason of the car leaving the track on account of a defective rail of the said track, and not through or on account of any fault on his part, they should find in favor of the plaintiff and against the defendant, provided they further find that the defendant company knew or could by the exercise of ordinary care have known of the existence of the defective rail on the said track for a sufficient length of time prior to the accident for them to have made necessary repairs."

This was the only instruction given that informed the jury as to what facts were necessary to be found in order to authorize a verdict for the plaintiff, the chief of which was that the car left the track on account of a defective rail.

There were ten instructions given at the request of the defendant, in one of which the jury were expressly told that the only negligence charged was the defective rail and failure to repair it, within a reasonable time after notice, and unless they found that defendant was guilty of that negligence the verdict could not be for the plaintiff, although the jury should find that defendant was negligent in some other respect.

These instructions took the mind of the jury away from all other questions of defendant's negligence except that relating to the alleged defective rail. The criticisms that appellant makes of the instruction given at the request of the plaintiff are (a) that it assumes that the rail was defective, (b) it leaves out of view the negligence of the motorman and (c) that it conflicts with instructions 4 and 5 given for defendant.

The instruction is not subject to the interpretation that it assumes that the rail was defective; it leaves that fact to be found from the evidence, and makes its finding essential to the plaintiff's right to recover. It does leave out of view supposed contributory negligence of the motorman, and charges the plaintiff with the consequence of his own fault only if any is found, and in that the instruction is correct. And this instruction does conflict with instructions four and five given for defendant, but those instructions were wrong; they told the jury that if the car was under the control of the plaintiff as conductor or under the joint control of the conductor and motorman and was being run at a greater speed than the ordinance allowed and that the speed contributed to the derailment, the plaintiff could not recover. Those instructions not only hold the plaintiff liable for the contributory negligence of his fellow-servant, but imply that it was the plaintiff's duty to see that the ordinance was obeyed without reference to what his master's orders in that respect might have been. There was some evidence tending to show that fifteen miles an hour was the schedule time on that part of Grand avenue. When it is a question between the master and the servant the master cannot hold the servant responsible for obeying his own order. An instruction, therefore, assuming it to be the servant's duty to obey the city ordinance should not, in a suit between the master and the servant, ignore a question of the master's order on the subject if there was evidence on that point.

We find no error in the record of which the appellant can complain. The judgment is affirmed. All concur.