JACKSON v. GULF ELEVATOR COMPANY, Appellant.

Division One, February 26, 1908.

1. NEGLIGENCE: Causal. Where no causal connection is shown between the negligence charged and plaintiff's injury, he cannot recover, and the court should sustain a demurrer to his. evidence.

2. ———: ———: Corn Grinder: Insufficient Light. Plaintiff was employed in the operation of a machine for grinding corn. In front of the machine, five feet high, midway thereof, was a door about six by fourteen inches, and near the bottom of the hopper was a pair of rollers, and below them about two feet, and twelve or fourteen inches below the lower edge of the door, was a second pair of rollers, and in determining whether or not the corn was being properly ground the operator's duties required him to insert his hand at the door and catch the grist, and examine it with his fingers, and in doing that plaintiff

inserted his arm to the elbow and in someway his hand was caught by the lower rollers and crushed. The negligence charged was that there was not sufficient light in the room, and that plaintiff had complained of that and defendant had two weeks previously promised to supply more windows, and these facts were proven. *Held*, that the evidence did not show that the poor light in the room had anything to do with plaintiff's injury, and he cannot recover.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

REVERSED.

*Harkless, Crysler & Histed* for appellant.

(1) If the appliances are safe for the purpose designed but the party is injured by improper handling, the master is not liable. Holmes v. Brandenbaugh, 172 Mo. 53. (2) Plaintiff was fully aware of all the conditions, and the evidence presents no excuse for his putting his hands between the rollers, and he was guilty of contributory negligence. Holmes v. Brandenbaugh, 172 Mo. 53. (3) But plaintiff recognizes this, and seeks to avoid it on the claim that there was not enough light in the room, but the condition was a part of the manner of conducting the business and plaintiff was fully aware of it. (4) Plaintiff also recognizes that this was one of the conditions of risk which he assumes. He seeks to excuse himself on the ground that the master promised to put in more windows in the room. But this is no excuse for two reasons: 1. He knew the master had not done so and continued to work for three weeks, knowing nothing was attempted to be done. Stalzar v. Dold, 84 Mo. App. 565. 2. The undisputed evidence is that the putting in of the windows he suggests would have in no way lighted the inside of the machinery.

*Boyle, Guthrie, Howell & Smith* for respondent.

There is not, in fact, any such doctrine in existence in this State as the defense of assumption of risk. The only grounds upon which a master may defend a claim of an employee alleged to have been injured through the negligence of the master is to either disprove the evidence of negligence, or show that the servant was guilty of contributory negligence, or that he continued to work with knowledge of a danger so glaring and obvious that no prudent man would have taken his chances therewith; or that, believing he could escape the danger by the exercise of reasonable care, he failed to exercise such care—was guilty of contributory negligence; and all of these questions are matters for the sound judgment of a jury. Curtis v. McNair, 173 Mo. 280. If there was not sufficient light in the machine, it was because there was not sufficient light in the building. If this insufficiency was because "of the failure of defendant to properly light," then the defendant was guilty of negligence. And if plaintiff "was injured by reason of the failure of defendant to properly light," and was at the time "in the exercise of ordinary care," the case was complete—an injury as the result of defendant's negligence without contributory negligence on the part of plaintiff.

WOODSON, J.—The plaintiff instituted this suit in the circuit court of Jackson county against the defendant to recover the sum of $25,000 damages sustained by him in consequence of personal injuries received through the alleged negligence of the latter.

The petition, in substance, alleged that on August 19, 1904, the plaintiff was in the employ of the defendant and was operating what was known as a corn grinder, in the second story of a building belonging to the. defendant, and that the building was without windows, except certain small windows at the top, and that the

light admitted was dim and insufficient to properly light
the building so that plaintiff could see to properly
perform his duties. That he made complaint of the in-
sufficiency of the light and objected to working with it,
and requested defendant to furnish more light and con-
struct more windows. That it promised to do so and
failed to do so. That on account of the insufficiency
of light, the plaintiff was injured while operating the
machine, to-wit, the corn grinding machine. That he
got his left hand caught in the moving machinery in-
side the grinding mill and so mashed and bruised that
it had to be amputated at the wrist.

The answer was a general denial, a plea of negli-
gence on the part of the plaintiff, and the assumption
of risk.

The facts of this case are but few and are undis-
puted, as disclosed by this record.

The defendant was engaged in the elevator and
grain business at Kansas City. It maintained and op-
erated a corn grinder in one of its buildings, which was
poorly lighted. The plaintiff was an employee of the
defendant, whose duty it was to operate that grinder.
The machine was designed to grind corn by a system
of cylinder rollers, which were propelled by steam pow-
er, and revolved inside of the machine. In dimensions
it was about four and one-half feet square, and stood
on the floor, and was about five feet in height, on top
of which stood a hopper, into which the corn was placed
and fed into the machine. It was made of steel, except
the sides and top, which were made of wood. The corn
was to be ground into chop for coarse feed. The corn
ran down through the hopper on to the rollers, and was
by them mashed and ground. In front of the machine,
and at a point midway thereof and at about the height
of a man's waist, there was a small door, about six by
fourteen inches square, opening into the machine,
which could be opened or closed by the operator at

will. There were three sets of rollers inside of the machine—one pair was near the bottom of the hopper; below that set some two feet was another pair, which are from twelve to fourteen inches below the lower edge of the door and some eight or ten inches removed back from the door; and still further removed is the third pair, which have nothing whatever to do with this case. The space between the first two pair is something near two feet. The grain passes from the hopper through the first and then drops forward toward the door and downward to the second pair of rollers. This door is for the purpose of permitting the operator to insert his hand in the machine so as to catch the grist from the first rollers in order to determine whether or not it is being ground properly, which is determined by the touch of the thumb and fingers. If the hand is inserted on a straight line between the upper and lower edges of the door, it will not come closer than twelve or fourteen inches to either the upper or lower pair of rollers, and, in order to catch the grain as it falls from the upper to the lower rollers, it is only necessary to insert the hand in on a straight line not further than up to the wrist. There are no lights on the interior of the machine; it is perfectly dark on the interior, except when the door is opened, which admits more or less light. It was not necessary for the proper operation of the machine that it should be light inside, nor was such light necessary to make it reasonably safe for the employees working about it. The light of the room came through two small windows, near the top of the room in which the machine was located, which gave sufficient light for plaintiff to see the machine in all of its outlines, and to transact all of his duties in and about the room, yet it was what was called a poor light. Plaintiff complained of the light, and the superintendent promised some two weeks prior to the injury to give him more light, but never did so.

Under the facts as above stated, on August 19, 1904, plaintiff, while in the performance of his duties, opened the door of said machine and inserted his hand into the machine and extended it, as he said, in some unaccountable way, forward and downward between the rollers below, which were from twelve to fourteen inches removed from the door, which caught and mangled his hand so badly that amputation was necessary.

Defendant asked the court to give an instruction in the nature of a demurrer to the evidence, which the court refused; and to that action of the court the defendant duly excepted. The court then submitted the cause to the jury under the evidence and instructions, and the jury found for the plaintiff and assessed his damages at the sum of $9,000. After taking proper steps therefor, the defendant duly appealed the cause to this court.

I. There is really but one question presented by this record, and that is, was the action of the court in refusing appellant's demurrer to the evidence error?

There is no pretense that the machine was defective or so placed as to make it dangerous for the plaintiff to work with or about it. In fact, no such charge is made in the petition, but the sole complaint is that the room in which the machine was located was poorly lighted.

While it is true the evidence does tend to show that the light in the room was poor, and that plaintiff complained of it to appellant's superintendent, and that the latter promised to remedy that, and that he never did so, yet the respondent introduced no evidence whatever which tends in the remotest degree to show how that fact had anything to do with or contributed to his injury. He does not pretend to say he did not see the machine, the door and the opening caused by opening the door; nor that he did not see and know where he was placing his hand.

He was an educated man and an experienced mill-man, and knew all about this machine and its operation, and had operated it some three weeks before he sustained the injuries complained of. He, himself, says he does not know how he happened to place his hand between the roller, nor did he tell the jury or the court what caused him to do so. He did not even tell the jury that the poor light of the room in which he was working had anything to do with his injury; and we are unable to see any connection between the two.

The only reasonable answer that suggests itself to our minds as to how he received his injury is this—he either thoughtlessly or negligently thrust his hand and arm up to his elbow into the opening and let his hand drop down to the rollers, which caught his hand and ground it off.

The conclusion is irresistible to a fair and unbiased mind after reading this record that the appliances with which the respondent was working were reasonably safe, and that his injury was caused by his improper handling the machine. [Holmes v. Brandenbaugh, 172 Mo. 53.]

There being no evidence in this record which tends even remotely to prove the respondent's injury was caused by the negligence of the appellant, we are, therefore, constrained to hold that the court erred in not giving its demurrer to the evidence.

For that reason the judgment is reversed.

All concur.