JOHN E. CAIN v. HUMES-DEAL COMPANY, a Corporation, Appellant.
—49 S. W. (2d) 90.

Division One, April 2, 1932.

*Jones, Hocker, Sullivan & Angert* and *Willard A. McCaleb* for appellant.

1108

*Mark D. Eagleton* and *Allen, Moser & Marsalek* for respondent.

HYDE, C.—This is an action for damages for personal injuries. Plaintiff was an employee of defendant and reported for work, about eight o'clock, on the morning of December 9, 1926, at the Voshon school, which was being constructed in the city of St. Louis. Defendant was the contractor building it. Plaintiff had been transferred there, two days before, from another building where he had been working for defendant. The foreman, under whom plaintiff was working that morning, sent plaintiff and a fellow employee; McDaniel, to the auditorium to clean the floor. On the two previous days plaintiff had been there he had been engaged in cleaning the upper floors of the building. The auditorium was on the first floor above the ground level. It was a large room in the center of the building, about 80 feet square, with a balcony extending 30 feet over the back part of the room. It had six windows on each side, three above the balcony and three below, each of which were about 11 feet wide. On that date glass had not been put in them. The floor, which was at that time of rough, unfinished concrete, was littered with brick bats, pieces of tile, loose nails, pieces of plaster and concrete, scraps of wood, lumber, mortar boards and other material which had fallen there during the construction of the building.

Plaintiff and McDaniel commenced scraping this material into piles for the purpose of loading it in wheelbarrows, and taking it to trucks to be hauled away. They were using square, iron shovels to do the scraping in a manner similar to sweeping with a broom. The weather was foggy and dark. Plaintiff and McDaniel testified that, when they commenced to work, on the part of the floor under the balcony, it was so dark that they could not see objects on the floor. McDaniel testified:

"Q. You say it was so dark you couldn't see anything on the floor at all? A. Well, you could see something white, but you couldn't discern nothing; you see, that was a colored floor like brick. Q. How could you see to clean up the floor? A. We did the best we could, just as the man told us. Q. You could see the brick down there? A. Couldn't see the brick unless it had some white mortar on it. Q. You couldn't see the brick unless it had some white mortar on it? A. Yes. Q. Could you see pieces of lime down there? A. Well, if the mortar—if it was spotted with mortar, you could see it probably."

Plaintiff said that he went to the foreman and asked for an extension so that they could have an electric light. The foreman said: "Go ahead; you haven't got any more than an hour or an hour and a half's work at the best on that job and you can have it done and work without a light over there." The foreman denied that anything was said about light. They went to work, scraping the rubbish into piles. After they had been working about thirty minutes, and while working near a pile into which they had scraped about three wheelbarrow loads, plaintiff stooped down to pick up a board, McDaniel, who was about four feet from him, reached out with his shovel to scrape more material into the pile. He held the shovel with the face toward him and the bottom of the shovel away from him. He brought the edge of it down on the concrete floor and struck a nail which flew up into plaintiff's right eye. The nail came with such force that it punctured the eye ball and caused the loss of sight of that eye. Before the accident plaintiff was blind in his left eye. This caused total blindness, for which he is receiving a state blind pension.

McDaniel's testimony was the only account of how plaintiff's injury occurred. Plaintiff, himself, did not see the nail nor have any knowledge of what was happening until he felt it strike his eye. As to how this happened, McDaniel testified, in part, as follows:

"Q. What was the particular task that you and this plaintiff were performing at the time of the injury? A. Well, we was cleaning up the rubbish of the floor with a shovel. Q. What was the condition of that rubbish? A. Well, it contained brick and pieces of brick and nails, pieces of tile—all kinds of junk. Q. Now, will you tell me what you know about the accident—how it happened? A. Well, the thing about it, when we were piling it up, we had got a pile, I reckon, about two or three foot square, and we would round it up in piles and carry it out in a wheelbarrow, and we had piled about three wheel-barrows in it and got it boxed around the pile; we raked it up close, you know, and Cain was (on) one side of the pile and I was on the other, and in scraping with my shovel that way (indicating) I dropped my shovel down and Cain hollered. Well, when he hollered he says, 'I got a nail in my eye, Buddie.' . . . Q. I say, did you have—did you see, yourself, the nails or any of these things that were in the pile at the time just before you let your shovel down? A. No, sir; you couldn't see anything in there in a light of that kind; it was too dark. Q. When you let your shovel down did you feel or hear any nail as it struck? A. Yes, sir; plenty nails; you could feel the nails when I laid my shovel down; you could feel the nails fly from it. . . . Q. What do you do where you have light? A. Well, with that light we could see all right just what you were doing. Q. What? A. When we have light we could see all right how to work; see the difference in the nails,

or anything. . . . Q. You don't know whether it (the nail) was piled up in the rubbish, or whether it was out on the floor or just where it was. A. No, sir. . . . Q. Well, how big was the main pile? A. You see, we were going all around the pile then to close it up. Q. And this other stuff extended out some two or three feet from it, and that is what you were raking up? A. Yes, sir. Q. Well how big was that? A. Oh, just kinda thick on the floor. I couldn't say the depth, or nothing like that. Q. An inch or two? A. No, it wasn't that thick. Q. Well, how deep would you say it was? A. Well, just thick up from the floor. I couldn't say the deepness of it; but we couldn't see nothing—how deep it was, or nothing. Q. You couldn't tell whether it was half an inch deep or two inches deep? A. No, you could not. Q. You know there was just a lot of rubbish there; brick bats and nails and all that stuff, and mortar? A. Yes, sir. Q. And dust and tile all mixed up together? A. All mixed up together. Q. And that is what you were raking up there when you say you heard a nail? A. Yes, sir.''

Plaintiff's petition contained the following charges of negligence, from which his injuries were claimed to have directly and proximately resulted:

''1. That said defendant did negligently and carelessly fail and omit to exercise ordinary care to furnish the plaintiff a reasonably safe place in which to work, in that the plaintiff and the said other employee of the defendant were required to work in the basement of said building, which was dark and unlighted and *not sufficiently lighted to permit the plaintiff and said other employee to see or discover said nail, at and prior to the time of being struck by said shovel,* and plaintiff's place of work was thus and thereby made unsafe and dangerous and not reasonably safe.

''2. That said defendant did negligently and carelessly fail and omit to furnish an adequate or sufficient amount of light to do the work aforesaid.

''3. That although the defendant knew, or by the exercise of ordinary care on its part could have known, of the aforesaid insufficiency and inadequacy of said light, defendant did negligently and carelessly thereafter order the work to be done in the manner aforesaid, and was thus and thereby guilty of negligence in ordering and directing said work to be done in a dark and unlighted room as aforesaid.''

The theory upon which the case was submitted to the jury is shown by the following portion of plaintiff's Instruction No. 1:

''And if you further find that the defendant, by the exercise of ordinary care, could have known of said dark conditions of said basement, if so, and of the danger, if any, arising therefrom to defendant's employees, but that defendant thereafter ordered and required plaintiff and said other employee to perform said work in said basement under the aforesaid conditions, if you so find; and if you

further find that while plaintiff and said other employee were engaged in said work, if so, a nail was struck by the shovel of said other employee in such manner that said nail flew and struck and injured plaintiff's right eye; and if you further find that *the dark condition of said basement* (if so) *prevented said other employee from seeing said nail, and that the striking of said nail by said other employee,* if you so find, *was due to and directly caused by said dark condition,* if so; and if you further find that defendant was guilty of negligence in ordering and requiring plaintiff and said other employee to perform said work in said basement under the conditions aforesaid, if you so find, and that said negligence, if any, on defendant's part was the direct cause of plaintiff's injury, then you will find in favor of plaintiff and against the defendant.''

At the close of plaintiff's evidence and at the close of all of the evidence defendant filed demurrers which were overruled. Defendant's contention is that the absence of light was not the proximate cause of plaintiff's injury; that if it was caused by any negligence it was the negligence of his fellow servant; that the manner of injury was so improbable that defendant was not required to anticipate it; and that plaintiff and his fellow servant chose a dangerous method of work, by working so close together, when they could have safely have done the work farther apart.

While it is conceded that the Workmen's Compensation Act went into effect prior to plaintiff's injury, plaintiff claims that he had the right to elect to proceed at common law, under Section 25 of the Act (now Sec. 3323, R. S. 1929), because defendant had neither insured its liability, by insurance in the form required, Section 28 of the Act (now Sec. 3326, R. S. 1929), nor obtained the permission of the Compensation Commission to carry its liability without insurance. Defendant contends that the insurance it had, issued before the Act went into effect, was a sufficient compliance with the Act because of an endorsement which provided that it was ''extended to cover any liability accepted or imposed'' by the Act if and when it became effective. Therefore, defendant contended, plaintiff was not entitled to bring this action for damages on its common law liability; and that, for that reason also, the demurrers to the evidence should have been sustained. Plaintiff did file a claim with the Workmen's Compensation Commission after this suit was commenced. The jury found a verdict for plaintiff upon which the trial court entered judgment, after *remittitur* for $20,000. From this judgment defendant appeals.

''The duty of the master to furnish the servant with a safe place of work includes the duty of furnishing sufficient light when necessary for the place of work.'' [39 C. J. 350, sec. 469.] The application of this rule is somewhat modified where conditions are constantly changing as in the construction or demolition of a building.

[39 C. J. 351, sec. 470; 18 R. C. L. 595, sec. 96.] There is no doubt, under the evidence, that the immediate cause of plaintiff's injury was the act of McDaniel in bringing the edge of his shovel down on the loose nail with such force that it was propelled into plaintiff's eye. If the dim light, furnished by defendant, was a contributing cause or combined with McDaniel's act to cause the nail to fly into plaintiff's eye, then defendant is liable for his injury. [State ex rel. Greer v. Cox, 274 S. W. 373; Johnson v. American Car & Foundry Co., 259 S. W. 442; Amis v. Standard 'Oil Co., 233 S. W. 195; Root v. Kansas City Southern Ry. Co., 195 Mo. 348, 92 S. W. 621; 6 L. R. A. (N. S.) 212; Moore v. St. Louis Transit Co., 193 Mo. 411, 91 S. W. 1060; De Weese v. Meramec Iron-Mining Co., 128 Mo. 423, 31 S. W. 110; Young v. Shickle, Harrison & Howard Iron Co., 103 Mo. 324, 15 S. W. 771; Steffen v. Mayer, 96 Mo. 420, 9 S. W. 630; 18 R. C. L. 717, sec. 196; 39 C. J. 675, sec. 798.] If, on the other hand, the act of McDaniel in forceably striking the nail, was the sole cause of the nail flying, independent of defendant's failure to furnish sufficient light, then defendant is not liable, because in that case, defendant's failure to furnish sufficient light would not be the proximate cause of the injury. Defendant is not liable for a negligent act of plaintiff's fellow servant. [Funk v. Fulton Iron Works Co., 311 Mo. 77, 277 S. W. 566; Bender v. Kroger Grocer & Baking Co., 310 Mo. 488, 276 S. W. 405; Hawk v. McLeod Lbr. Co., 166 Mo. 121, 65 S. W. 1022; 39 C. J. 537; sec. 644; 18 R. C. L. 712, sec. 193.] (However, it is plaintiff's contention that his fellow servant was not negligent.) If the evidence fails to show that defendant's failure to furnish more light in the room had any causal connection with McDaniel's striking the nail, as he did with his shovel, then there was nothing to submit to the jury and defendant's demurrer, at the close of the whole case, should have been sustained. Plaintiff can prevail here only upon the theory on which he tried the case below.

While we do not find this exact situation presented in any case, the principles upon which this question must be ruled have been often applied by the courts. In Jackson v. Gulf Elevator Co., 209 Mo. 506, 108 S. W. 44, plaintiff sought to recover for an injury to his arm in a corn grinding machine, alleged to have been caused by defendant's negligence in failing to sufficiently light the building, where plaintiff worked with the machine. It was shown that plaintiff had complained of the insufficiency of the light and objected to working without more light. It was plaintiff's duty to open a door in the machine and take out corn passing through the machine to see if it was being properly ground. In doing this, he put his arm in too far and it was crushed. The trial court overruled defendant's demurrer to the evidence and plaintiff obtained judgment. This court reversed this judgment, saying that the evidence failed to show that

the poor light had anything to do with his injury, but that it was caused by plaintiff either thoughtlessly or negligently putting his hand too far into the machine.

In Kolbow v. Haynes-Langenburg Mfg. Co., 318 Mo. 1243, 3 S. W. (2d) 226, plaintiff, who was removing bolts from a furnace in a basement, alleged to be insufficiently lighted, had a piece of iron, or carbon, fly into his eye when he struck a pipe with his hammer. The court said that, while there was evidence that the place was insufficiently lighted, there was nothing in the evidence to show that the insufficient light had anything to do with the injury. It was not shown that, with light, plaintiff could have dodged the particle as it flew toward him or that he or anyone else would have done the work any differently if there had been more light.

Another similar case was Anderson v. Forrester-Nace Box Co., 103 Mo. App. 382, 77 S. W. 486, where plaintiff, who was laying a floor, charged that the basement, where he was working, was so dark that he could not see clearly and that when he struck a nail, in the floor, it flew into his eye and injured him. The evidence was that he struck the nail a square blow and it flew up. The court held "that the question of light had no connection with the accident, since the stroke he made was a proper one and one that the darkness did not effect and that light could not have bettered." We might have had the same situation, here, if the stroke McDaniel made with his shovel had been a proper one. Since it is not contended that plaintiff, here, with any light, could have seen the nail coming, after McDaniel hit it, and dodged it, this might have been a pure accident for which the master would not be liable. [39 C. J. 288, sec. 414; see, also, Coble v. St. Louis & San Francisco Ry. Co., 38 S. W. (2d) 1031.]

In Ryan v. McCully, 123 Mo. 636, 27 S. W. 533, plaintiff charged that her husband's employer was negligent in failing to furnish him a safe place to work, while constructing a bridge, and that he was caused to fall, by reason of this negligence, when a suspended beam struck the beam upon which he was standing. The court held that it was the negligence of a fellow servant, lowering the beam, in a careless manner, so that it struck the beam upon which the plaintiff's husband was standing, which was the sole cause of his fall, and that his employer was not liable.

In Steffen v. Mayer, 96 Mo. 420, 9 S. W. 630, plaintiff was injured while unloading, with other employees, a heavy piece of machinery from a wagon. He charged that his injury was caused by his employer's failure to block the wheels of the wagon or unhitch the team. The horses became frightened at a passing railway train and caused the wagon to move so that the machinery plaintiff was lifting fell on him and injured him. The court held it was the teamster's duty to look after the horses and that either plaintiff, or any of his co-employees, could have anticipated the danger of not blocking the wheels

as well as the master; and that, therefore, plaintiff's injury resulted solely from either his negligence or that of his fellow servants. The court said:

"Where a suitable machine is put in the hands of a competent servant, he must exercise his judgment in the use of it; and so here it was the duty of the servant to guard against accidents incident to the business in which they were engaged, and which were open to their observation."

In Kappes v. Brown Shoe Co., 116 Mo. App. 154, 90 S. W. 1158, plaintiff's son was killed by falling into an elevator shaft. Plaintiff charged his employer with negligence in not maintaining proper fastenings on the elevator gate. The gate had been opened by fellow servants and other employees crowding to get up to the gate, pushed several employees over the edge of the elevator shaft, into which they fell and were killed. It was contended that if proper fastenings had been maintained, on the elevator gate, it could not have been opened by fellow servants on the outside. The court, in holding the employer was not liable, said:

"Even if the gate was carelessly fastened, the raising of it by the three boys when the car was above was an independent act of negligence, not induced or set in motion by the defective construction of the gate, but merely rendered possible by it. In other words, if the gate was faulty in not having interior fastenings, that fact was a condition which enabled the boys on the outside to raise it, but did not cause them to raise it."

In Hendrickson v. Kansas City (Mo. App.), 182 S. W. 108, plaintiff, working in an excavation in a street, was holding a chisel for a fellow servant to strike, with a sledge hammer, to cut a pipe. The fellow servant struck a brace timber which caused the hammer to glance and strike plaintiff's hand instead of the chisel. Plaintiff charged defendant was negligent in placing the brace timbers in such a way that they extended into the opening where plaintiff and his fellow servant were working. The court held that the proximate cause of the injury was not an unsafe place of work, but the careless handling of the hammer by plaintiff's fellow servant. If, here, McDaniel had struck plaintiff with his shovel instead of striking the nail which struck him, would it be contended that poor light caused him to strike plaintiff? [For other authorities discussing this proposition see Van Bibber v. Swift & Co., 286 Mo. 317, 1. c. 338, 228 S. W. 69; McIntyre v. Tebbetts, 257 Mo. 117, 165 S. W. 757; Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934; Higgins v. Mo. Pac. Ry. Co., 104 Mo. 413, 16 S. W. 409; 39 C. J. 286, sec. 413, also, 696 and 680, secs. 798 to 881; Labatt's Master & Servant, Chapter LXVII, and cases cited.]

"The servant must, in the first place, prove that his injury was caused by the alleged negligence. There can be no recovery where the

evidence, so far as any certain deductions can be drawn from it, tends to prove that the accident was not caused by the defect complained of. The nonexistence of a legal connection between the negligence and the injury is predicable whenever, for aught that appears, the accident might have happened even if the defects in question had not existed, or if the precautions which were omitted had been taken. The master cannot be held liable if his negligence was merely a condition, as opposed to the efficient cause of the injury. [4 Labatt's Master & Servant (2 Ed.) sec. 1570.] Many cases are collected in notes to Sections 1571 and 1581, showing how the courts have applied these principles.

A case, where the negligence of the master, in failing to furnish sufficient light, was the proximate cause of the servant's injury, although an act of a fellow servant was the immediate cause, is Irmer v. St. Louis Brewing Co., 69 Mo. App. 17. There, defendant had a trapdoor, over a stairway in a passageway, where there was no light. Plaintiff walked across this closed door into an office, where his duties required him to go, at night. In a few minutes he came out and fell down the stairs. While he was in the office, a fellow servant, whose duty it was to go down the stairway after coal, had opened the door and left it open, while he was getting coal. The failure of defendant to have light, at a place where there was such a pitfall in the passageway, was the cause of plaintiff's falling, regardless of how the door came to be open. The danger of such an accident without light, and that light would prevent it, was obvious. It is clear, here, that it was not the absence of light at a place where nails were mixed with other rubbish, which created the danger to employees working there, but that it was created by the act of McDaniel in striking his shovel so forceably into the rubbish containing loose nails, and it is also clear that such an act would create a dangerous situation whether there was light or not.

McDaniel must have struck the floor with his shovel very forceably to have caused the nail to fly, from the floor into plaintiff's eye, with such force that it punctured his eye ball. There was no reason for McDaniel to strike his shovel on the floor with any force. The material which he was scraping into the pile was loose on the floor. He knew of what it consisted and could see where it was, although it was too dark to distinguish the objects composing the mass. There is no contention that he could not see the floor and struck it forceably because he could not see where it was. The time, when he was required to use force on the shovel, was, after it was on the floor, to pull it toward him and scrape the material into the pile. Plaintiff does not contend that any force, applied in scraping, could have caused the nail to fly with the force it did and it is obvious that it could not.

Since there was no reason for McDaniel to strike his shovel forceably against the floor, it probably was a thoughtless or careless act on his part. If so, how can we say, except by mere speculation and conjecture, that he would not have done it, if there had been more light? His action, in doing so, was independent of the poor light in the room. That could not have had anything to do with this act. The same thing would be true if he intentionally struck the floor with unnecessary force. Plaintiff's contention is that McDaniel would not have struck the floor, at that time and place, if there had been more light because he would have seen the nail and avoided striking it. In other words, his argument is that, if McDaniel had seen the nail, he would not then have struck the floor at all, or, if he was going to strike it anyway, he would have taken care to strike it at a place where he could see there was no nail. While it is entirely speculative, whether or not the nail McDaniel struck could have been seen, regardless of how much light there was, because of the fact that, so far as the evidence shows, it may have been covered by other material, yet, if we concede that McDaniel could have seen the nail with more light, there was no more reason why he should strike the floor forceably when there was poor light than if there had been good light. It was not necessary to strike the floor forceably to do his work and it was improper for him to do it. It is true he said, "When we have light we could see all right how to work," but he knew not to strike the floor with great force and could see not to do it whether there was a good light or not. Poor light did not cause him to do it. He knew that there were nails in the rubbish and that if his shovel was brought down forceably against one it would fly into the air. Of course, it was very unusual for such an act to cause an injury, but in this case it did. He, perhaps, could not be expected to anticipate such an unusual accident, but, if so, neither could defendant be expected to anticipate it. We are therefore forced to the conclusion that plaintiff's injury was not caused by the negligence charged against defendant in plaintiff's petition, failure to provide a safe place to work; and that defendant's failure to furnish more light in the room was not the proximate cause of his injury.

It was a terrible misfortune to plaintiff to be so injured. However, our duty is to declare the principles of law applicable to the facts of each case and decide cases according to those principles. It was because there was no common-law liability in such cases as this, and the resulting hardship to injured workers, that the Workmen's Compensation Act was enacted by the Legislature and approved by the voters of this State. Plaintiff must seek his compensation under its provisions. The view we have taken of the case makes it unnecessary to consider the other questions of whether the insurance, which defendant carried, failed to sufficiently comply with the require-

ments of the Workmen's Compensation Act, and whether plaintiff was thereby given the right to proceed at common law.

The judgment is reversed. *Ferguson* and *Sturgis*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.