Jerry PIERCE, (Plaintiff) Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, (Defendant) Appellant.

No. 31498.

St. Louis Court of Appeals.
Missouri.
July 21, 1964.

**944**

Donald W. Bird, St. Louis, for appellant.

Padberg & Raack, William J. Raack, St. Louis, for respondent.

ANDERSON, Judge.

This is an action for damages for personal injuries sustained by plaintiff when he fell while alighting from a bus of the defendant St. Louis Public Service Company. The petition alleged that as he was preparing to leave said bus, he stepped on a foreign substance on the exit step of said bus, and as a result thereof he was caused to fall to the pavement and sustain serious and permanent injuries. The jury returned a verdict in plaintiff's favor in the sum of $3,500. Defendant has appealed from the judgment on this verdict.

The accident occurred on June 26, 1961, between 1:00 and 1:30 P.M., at the southeast corner of Page and Pendleton Avenues, in the City of St. Louis. Page Avenue runs east and west, and Pendleton runs north and south. The weather at the time was fair.

Plaintiff boarded the bus, which was eastbound on Page Avenue, at Academy Avenue, approximately eight blocks west of Pendleton. His intention was to get off of the bus at Pendleton. No passengers were standing in the bus, and the seats were approximately half full. The last stop where passengers get off the bus prior to reaching Pendleton was at Taylor Avenue, two blocks west of Pendleton. Plaintiff testified that the two blocks between Taylor and Pendleton were the same length as the average city block. It took from three to five minutes for the bus to travel from Taylor to Pendleton. As the bus proceeded from Taylor to Pendleton, plaintiff did not see anyone approaching the rear doors, nor did he see anyone throw or drop anything near the rear doors.

As the bus approached Pendleton Avenue, plaintiff arose from his seat and walked toward the rear doors, arriving there just as the bus stopped at the regular stopping place at the southeast corner of the intersection of Page and Pendleton. No other passengers got off at the stop. There are two steps at the rear doors of the bus, between the aisle level and the sidewalk. After arriving at the doors, plaintiff stood facing the doors and waited for the operator to open them. He stood opposite the center of the doors and about two feet from the edge of the top step. From that point both steps were visible to plaintiff. He did not at that time see anything on the steps. The bus driver then opened the doors and plaintiff stepped down with his right foot, then with his left foot, placing his left foot on the bottom step. Plaintiff testified that when he placed his left foot on the bottom step his foot slipped from under him, and he was caused to fall onto the sidewalk. He stated that when he started down the steps he could see them. He was not examining them but was looking out at the sidewalk where he was going. As he descended the steps he did not see anything on them. He further testified that he was caused to fall by something slippery on the bottom step. His full weight was on his left foot when he placed it on the bottom step, and he slipped backward, causing him to fall forward. The bus was close to the curb at the time. Plaintiff fell onto the sidewalk, with his feet toward the bus and his head in the opposite direction. Plaintiff was unable to arise. He was later taken to the hospital by the police.

While lying on the sidewalk, plaintiff noticed a foreign substance on the bottom step. Plaintiff did not know what this foreign substance was or its color, but stated it was located about the center of the step. He had no knowledge how this substance got onto the step, nor where it came from, or how long it had been there. He never saw it prior to his fall. Three of the bus passengers, Adolph Eli Alford, Beatrice Stinnett, and Johnnie May Bernard, were called as witnesses by plaintiff. They all testified that they were seated in various places in the bus when they heard an outcry, then saw plaintiff had fallen. Alford testified that he looked at the bottom step and saw a spot there slightly left of the center of the step as you look out the bus. It was, according to his testimony, about three inches in diameter, dirtish green in color, and seemed to be some sort of vegetation. He further stated it was rather viscous in nature and "sticky." It seemed to be smeared as if it had been stepped on. It also appeared to be moist. He did not recall that any part of it was dry.

Beatrice Stinnett testified that she saw something on the bottom step which looked like a banana peel, on the left side of the center of the step as you stood looking down the step. It was a dirty brown in color like it was overripe, and was between two and three inches in length. The edges were curled up. She thought it was moist. She did not notice if there were any dry spots on it.

Johnnie May Bernard testified that she saw something on the step toward the left side as you descend. It seemed to her as though it was a piece of banana. A part of it was smeared or mashed and was dark brown in color. She stated it was moist.

Elizabeth Green, while on the west side of Pendleton, saw plaintiff lying on the sidewalk and crossed the street to where he was. She testified that she saw a banana peeling on the bottom step of the bus, and that it was dark brown in color. She stated that it looked like it had been stepped on, as if somebody had slipped on it.

The investigating police officer, George Fink, testified that he arrived at the scene, observed plaintiff lying on the sidewalk outside the rear doors of the bus, and further observed a two or three inch piece of peeled banana on the center of the bottom step at the rear doors of the bus. He stated that the banana was light yellow in color and had been mashed down.

Mr. John W. Bland, a professional engineer, testified on behalf of plaintiff that he had, prior to the trial and at the request of plaintiff, inspected the bus in question. He testified that the steps at the rear doors were 36 inches in width and 9 inches in depth from the riser to the edge of the steps. He further testified that the bus was equipped with three mirrors, one 4 inches by 12 inches, located in front of and directly above the driver's head, another round mirror 5⅞ inches in diameter over the right front door, and a third one 11¾ inches in diameter mounted just to the rear of the rear steps. He stated that when he sat in the driver's seat he was, through the use of the mirrors, afforded an "excellent view" of the horizontal surface of the rear steps, except for the rear four inches thereof. He was able to see objects when placed near the center of the bottom step and recognize the color, size, and shape of said objects. He was thus able to see and identify a white pencil about 6 inches in length. He observed a white napkin which was approximately 8 x 8 inches in size, a yellow cocktail napkin approximately 6 x 6 inches in size, a flat green object which he later found to be a rubber coaster, a yellowish brown banana skin approximately 3 x 4 inches in size, a piece of peeled banana one inch in diameter and two inches in length, and a fifty cent piece. The coin was moved to various positions on the step, and was visible through the mirrors at all points on the step except for the last four inches toward the rear of the bus.

Archie Truman Bush, Jr., operator of the bus, testified on behalf of defendant. He stated that three persons boarded the bus through the front doors at the stop where plaintiff fell, and that plaintiff was the only one to alight from the bus at this stop. He further stated that he did not look into the mirrors at the rear steps at any time after the last passengers had alighted at the rear doors, until after plaintiff fell. He testified that at the time in question he heard a commotion near the rear doors of the bus; that he looked into the mirrors before he arose to go back to the rear steps but did not see anything on the steps; that he arrived at the rear doors and observed a yellow substance approximately three inches in diameter in the center of the bottom step, which appeared as if it had been stepped in. On cross-examination the operator admitted that from his position in the driver's seat he could see almost all of the horizontal surface of the rear steps by the use of the mirrors with which the bus is equipped, and further in a demonstration which he himself performed, he was able to see the presence of small coins which he had placed on the rear step.

Both parties introduced medical testimony and other evidence on the issue of damages. However, since there is no issue here as to this, there is no reason to review the evidence.

Defendant contends that the trial court erred in refusing to sustain its motion for a directed verdict at the close of the evidence, for the reason that there was no substantial evidence of any foreign substance on the step at or prior to plaintiff's fall, nor was there substantial evidence that plaintiff's fall was caused by a foreign substance on said step. It is also urged that there was a lack of essential proof, even though plaintiff testified he was caused to fall on something "slippery", for the reason that it might have been that plaintiff's shoe was "slippery", thus bringing into operation the rule that where from a plaintiff's evidence one or more inferences may be drawn, one of which supports and is an essential element of plaintiff's case, and the other does not, plaintiff's case fails as to that element of proof.

In support of this proposition, defendant cites Davis v. St. Louis Public Service Company, Mo., 316 S.W.2d 494, and Davidson v. Missouri Orpheum Corporation, 236 Mo.App. 1025, 161 S.W.2d 707.

There were seven witnesses, including plaintiff—three passengers, a pedestrian

who appeared at the scene immediately after plaintiff's fall, a police officer who was called to the scene and who arrived there before the bus was moved from the curb, and the operator of the bus, all of whom testified that they observed the bottom step of the bus immediately after plaintiff's fall, and saw a foreign substance on the bottom step which appeared to have been stepped in. Plaintiff testified that his foot slipped backward from under him as he stepped onto the bottom step. There was no evidence adduced that there was no foreign substance on the step after plaintiff's fall.

Under the foregoing testimony it could be reasonably inferred that there was a foreign substance on the step prior to and at the time plaintiff stepped down onto the bottom step, and that plaintiff's fall was caused by reason of his stepping into said substance. There is no rule of law which excludes reasonable inferences and circumstantial evidence from consideration in determining an ultimate fact. On the contrary, it has been held many times that inferences from circumstantial evidence are fact questions, and where there is credible evidence to support them and they tend to support a necessary element of the cause of action, such inferences are proper for the jury to consider. Alvey v. Sears, Roebuck and Company, Mo., 360 S.W.2d 231, 1. c. 236; Tueteberg v. St. Louis Public Service Company, Mo.App., 41 S.W.2d 956.

Of course, if plaintiff's own showing puts the evidence in equipoise as between two legitimate inferences, plaintiff may be said to have failed to make a prima facie case. But here no inference that plaintiff fell as a result of "slippery" shoes could be drawn without resort to speculation and conjecture. The jury has a right to disbelieve plaintiff's testimony, but on a motion to dismiss we must accept it as true together with all reasonable inferences which may be drawn from such evidence.

It is also urged that the motion for a directed verdict should have been sustained for the reason there was no showing that defendant's operator knew there was a foreign substance on the step, nor was there a showing that it had been on the step a sufficient length of time to charge defendant with knowledge thereof. We find no merit to this contention. We believe the case is governed by the principles laid down in the recent Supreme Court case of Alvey v. Sears, Roebuck and Company, 360 S.W.2d 231, supra. In that case plaintiff, while walking in an aisle of defendant's store, stepped on something round which caused her to fall. Defendant's assistant store manager preceded her. There was no one in the aisle between plaintiff and the assistant store manager. The court held that plaintiff made a case for the jury, notwithstanding the fact that she failed to show the length of time the object had been on the floor. The court said:

"It is clear in the case before us that the evidence does not show how long the object (whatever it was), which plaintiff says she stepped on and caused her to fall, was present on the floor. Notwithstanding that fact, the question remains whether the evidence, which for the purpose of our review we must treat as true, justifies a verdict for plaintiff. Such evidence shows: that Tallant whose duty it was to be on the lookout for foreign objects on the floor of his department walked through the aisle about 15 feet ahead of plaintiff; that no one was in the aisle between plaintiff and Tallant during the time in question; that Tallant walked by the point where plaintiff fell not more than a few seconds before the fall; that there was an object on the floor on which plaintiff stepped and fell.

"Considering that evidence to be true, did it justify the jury to find that the foreign object was lying in the aisle as Tallant passed by? And

could the jury find that the failure on Tallant's part to discover the object and pick it up or warn plaintiff constitutes negligence? It is true, as defendant contends, that the object (Exhibit 1) on the floor may have been kicked or rolled to the point where plaintiff stepped on it between the time Tallant passed and when plaintiff reached that point. The jury could well have considered that a possibility but highly improbable. The jury could well have found that it was more likely that the object was there when Tallant passed that point.

"We cannot say as a matter of law that Tallant was not negligent in failing to discover and pick up the object on the floor when he passed the point in question."

In the case at bar we have held that there was sufficient circumstantial evidence from which a jury could reasonably find that there was a foreign substance on the step at the time plaintiff attempted to alight from the bus. There was evidence that no one was near the rear steps for at least two blocks before the bus reached the intersection of Page and Pendleton. It is undisputed that the bus was equipped with mirrors, so adjusted that the operator sitting in his seat in the front part of the bus could see that portion of the bottom step where, according to plaintiff's testimony, his foot slipped from under him.

■■ It also appears that small objects, no larger than the substance which all the witnesses testified they saw on the rear bottom step, could be seen through these mirrors when such objects were placed on said step. The defendant's driver admitted he could see small copper and silver coins on the bottom rear step by the use of the mirrors. We therefore have a situation where the bus driver had the means at hand to readily perceive the presence of any foreign substance on the step, of the kind here involved, which might render the steps dangerous to persons using them. The bus driver was under the duty to exercise the highest degree of care to look out for the safety of his passengers. Thus, under the facts and circumstances revealed in the record, we believe the case falls within the principles announced in the Alvey case, supra, and that it cannot be said, as a matter of law, that defendant's employee was not negligent in failing to discover the foreign substance on the step and to warn plaintiff of the danger which its presence created. The court did not err in refusing to direct a verdict for defendant.

Defendant's final assignment of error is that Instruction No. 1, given at plaintiff's request, was erroneous because it assumed a controverted fact, namely, that a foreign substance was on the step at or prior to plaintiff's fall.

That part of the instruction complained of reads as follows:

"* * * and if you further find that in attempting to alight from the rear door of said bus, plaintiff was caused to slip on a piece of banana or banana peel on the bottom step, * * * and if you further find that by reason of the presence of said piece of banana or banana peel, said step was dangerous and not reasonably safe, and if you further find that prior to plaintiff's fall, defendant knew, or by the exercise of the highest degree of care, should have known of the presence of said banana peel, in time thereafter to have removed the same or to have warned plaintiff of its presence but defendant failed to remove the piece of banana peel and failed to warn plaintiff of its presence," etc.

■ Clearly, the instruction does not assume there was a foreign substance on the step at or prior to plaintiff's fall. What the court by this instruction required the jury to find was that plaintiff was caused to slip on a piece of banana or banana peel on the bottom step. How could the jury

find that plaintiff slipped on a piece of banana or banana peel on the bottom step without finding there was a piece of banana or banana peel on the bottom step? The average juror, in our judgment, would construe the language of the instruction to mean that the jury was required to make two findings, namely, that plaintiff was caused to slip on a piece of banana or banana peel, and that the banana or banana peel was on the bottom step at the time he slipped.

We are not without authority to support the above ruling. Geary v. Kansas City, Osceola & Southern Railway Company, 138 Mo. 251, 39 S.W. 774 is directly in point. In that case plaintiff claimed to have been injured when a locomotive "was derailed by reason of the breaking of the flange of the wheel of the front truck thereof, which said wheel was, and for many days prior thereto had been, in a cracked, defective and dangerous condition." Plaintiff's verdict-directing instruction required a finding that "defendant's said engine was derailed by reason of the cracked, defective, and dangerous condition of the wheel of the front truck thereof, causing the flange of said wheel to break; that defendant knew, or by the exercise of reasonable care and caution might have known, of such cracked, defective, and dangerous condition of said wheel in a sufficient time to have made the same reasonably safe for the purpose for which it was used, but failed to do so;" etc. Defendant urged that the instruction assumed that the wheel of the locomotive was cracked, dangerous, and defective. The court held this contention to be without merit. The court said:

"The objection urged to instruction No. 2 given for the plaintiff is that 'it assumes that the wheel of the locomotive was cracked, dangerous and defective.' We do not so understand this instruction. What the court told the jury, in this regard, by the instruction was, that 'if the jury find from the evidence that the defendant's engine was derailed by reason of the cracked,

defective, and dangerous condition of said wheel,' etc. How the jury was to find that the engine was derailed by reason of the cracked, defective, and dangerous condition of the wheel, without finding that the wheel was in a cracked, defective, and dangerous condition, we think would be past the understanding of the ordinary juryman, and would perhaps suggest itself only to the verbal critic who found it necessary to find some fault in the instruction, which in this instance was evidently not found by the learned counsel for the defendant until after the trial, for their own instructions contain a like assumption, if this be an assumption."

Other cases in point are Elgin v. Kroger Grocery and Baking Co., 357 Mo. 19, 206 S.W.2d 501; Moore v. St. Louis Transit Co., 193 Mo. 411, 91 S.W. 1060; Sollars v. Atchison, Topeka and Santa Fe Railway Co., 239 Mo.App. 410, 187 S.W.2d 513.

■ The point made that other parts of the instruction assume that said foreign substance was on the bottom step is without merit. "It is not necessary to sprinkle an instruction with 'if you so find' in order to avoid the charge of assumption of facts (88 C.J.S. Trial § 327d p. 857; if the instruction in its beginning, as this one does, plainly requires the jury to find the hypothesized facts from the evidence that is sufficient." Kelly v. Kansas City Public Service Company, Mo., 335 S.W.2d 159, l. c. 163.

There is yet another reason why defendant's contention should not be sustained. By Instruction No. 2 the court charged the jury that "you are further instructed that if you find and believe from the evidence that at the time and place mentioned in the evidence there was no banana or banana peel on said step, * * * then, the plaintiff is not entitled to recover herein under Instruction No. 1 submitted to you herein and your verdict must be for the defendant."

The court's instructions should be read as a whole to ascertain the matters submitted, and in some instances an indefinite or ambiguous requirement to find some fact essential to a verdict may be cured by a definite requirement with respect thereto in other instructions. See Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681, and cases cited therein. After reading both Instructions No. 1 and No. 2, no juror would believe that the court considered the existence of the foreign substance on the bottom step as established. On the contrary, after reading both instructions, they would know that it was their duty to find said fact before returning a verdict for plaintiff. We find no error in the record.

The judgment is affirmed.

WOLFE, Acting P. J., and FRANK D. CONNETT, Jr., Special Judge, concur.